**In the Matter of Delma EASTWOOD, Bankrupt.**

**No. B-63-1820.**

United States District Court
D. Oregon.

March 30, 1965.

Frank McK. Bosch, Vosburg, Joss, Hedlund & Bosch, Portland, Or., for bankrupt.

Boyrie & Miller, Portland, Or., for trustee.

EAST, District Judge.

The referee has filed his certificate for review, made pursuant to the petition of attorneys for a voluntary bankrupt, challenging the referee's award of professional fees payable from bankrupt's estate.

Those services included 16½ hours devoted as follows, according to a schedule submitted to the referee:

"Briefing law re statutory right of bankrupt to exemptions * * * Conference Boyd Long (attorney for trustee) and preparing stipulation for settlement of exemption controversy * * * Preparing stipulation for settlement of exemption controversy * * * Briefing law re homestead exemptions."

Another sixteen hours were spent as follows, according to petitioners' submitted schedule:

"Preparing petition to. set aside judgment liens * * * Preparing stipulation re petition to set aside judgment liens * * * Hearing before Judge Johnson re petition to set aside judgment liens * * * Preparing order setting aside lien of judgment * * * Preparing statement showing all liens and encumbrances against property claimed as exempt by bankrupt at request of trustee. * * *"

For all their services, petitioners sought a $1900 fee from the estate, including $150.00 for the work of a certified public accountant. The referee awarded instead a fee of $1,000.00, including $100.00 for the accountant's work, and petitioners challenge this award in light of the referee's disposition of the indicated services embraced in this review.

The referee disallowed any fees payable from the estate for the first group of enumerated services, declaring that the

" * * * time and efforts spent by attorneys for the bankrupt relating solely to the right of the bankrupt to exemptions and the time spent

848

conferring with counsel for the trustee and stipulations entered into in settlement of questions of exemption, were matters which are not directly contributing to the benefit of the estate, or as an aid to the administration thereof, and are, therefore, not compensable out of the bankrupt's estate; * * *"

The referee treated the second group of enumerated services somewhat differently, declaring that

"the time spent in preparing petitions, attending at hearing and preparing of order relating to setting aside of judgment liens on the property claimed exempt by bankrupt were (sic) primarily for the benefit of the bankrupt in protection of her interest, and to a lesser extent was for the benefit of the counsel for trustee in the proper administration of the estate or for the benefit of the estate, and that, therefore, the same is only an element to be considered in the setting of fees compensable out of the estate; * * *"

Petitioners do not question the correctness of the fee awarded if this Court decides the referee was correct, as a matter of law, in his treatment of the indicated services. Thus, this review presents the issues whether the referee erred:

1) In denying compensation to bankrupt's attorneys from the estate for services rendered to establish bankrupt's exemption rights; and

2) In allowing only partial compensation from the estate for services rendered in setting aside judgment liens on property claimed exempt, when the resulting value, free of liens, exceeded the exemption limit and thus increased the distributable estate.

The relevant statutory provision is § 64, sub. a of the Bankruptcy Act, 11 U.S.C. § 104, which provides in part:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including * * * one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the bankrupt in voluntary and involuntary cases, * * * in such amount as the court may allow. * * *"

In addition, § 6 of the Bankruptcy Act, 11 U.S.C. § 24, provides:

"This title shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months immediately preceding the filing of the petition, or for a longer portion of such six months than in any other State: * * *."

Manifestly, § 64, sub. a does not, within its express terms, settle the specific issue in the case. Nor does the legislative history, either of § 64 as it now stands or of its predecessor sections controlling priorities, indicate Congressional intent with respect to attorney's fees for establishing exemptions. Federal court decisions, instead, have been the source of the more detailed meaning of § 64.

In Randolph v. Scruggs, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903), the Court approved the so-called "benefit to the estate" principle. The case involved a claim for various services rendered an *involuntary* bankrupt following a general assignment for benefit of creditors under state law. The Court held

"[T]he services to the voluntary assignee may be allowed so far as they benefited the estate, and inasmuch as he would be allowed a lien on the property if he had paid the sum allowed, the appellants may stand in his shoes, and may be preferred to that extent. No ground

appears for allowing the item for services in resisting an adjudication of bankruptcy." Id. at 539, 23 S. Ct. at 713.

In 1903, the bankruptcy section controlling priorities permitted attorneys' fees

> "to the bankrupt in *involuntary* cases *while performing the duties herein prescribed,* and to the bankrupt in *voluntary* cases, *as the court may allow*; * * *." [Emphasis supplied.]

Thus, in involuntary bankruptcies the range of compensable services was fairly clearly indicated, and was apparently narrower than in voluntary bankruptcies. Section 64, in its present form, as quoted earlier, erases these distinctions.

In Conrad, Rubin & Lesser v. Pender, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933), attorneys had been paid, prior to filing the petitions in bankruptcy, for attempts to negotiate a settlement with creditors. After bankruptcy proceedings were initiated, the referee, relying upon § 60, sub. d, re-examined the reasonableness of the fee and directed the attorneys to return part of the fee to the trustee. The referee rejected a challenge to his jurisdiction to re-examine and held that 60, sub. d jurisdiction is determined not by the nature of the services but by the motive or state of mind of the debtor in securing the services—more specifically, whether they were so secured in contemplation of bankruptcy. The referee held they were. On appeal, the Supreme Court, following affirmances by the appropriate District Court and Court of Appeals, likewise affirmed. The Court agreed with the referee's decision that 60, sub. d jurisdiction did not rest upon the nature of the services, i. e., whether they are "germane to the aims of the Bankruptcy Act." To further clarify its position, the Court, *by way of contrast to 60, sub. d,* noted the allowances contemplated by then § 64, sub. b (3), now 64, sub. a. "The services within the latter provision," the Court noted gratuitously and somewhat unclearly, "are those rendered in aid of the admin-istration of the estate and the carrying out of the provisions of the act." 289 U.S. at 476, 53 S.Ct. at 704. At the time of this decision, 64, sub. b(3) permitted "one reasonable attorney's fee, for the professional services actually rendered, * * * to the bankrupt in voluntary and involuntary cases, as the court may allow; * * *."

As Collier has noted with respect to the Conrad decision:

> "It is conjectural whether or not this may be understood to signify that the Supreme Court approves of a more liberal construction of sec. 64a(1) than the presently prevailing attitude, which generally compensates only services rendered in the performance of duties, and denies allowances for services in aid of the mere exercise of a personal right of the bankrupt (e. g., discharge or exemption). The weight of available authority, * * * is in favor of limiting compensability to services rendered in assisting the bankrupt, voluntary and involuntary alike, in performing his legal duties rather than exercising his legal privileges." 3 Collier on Bankruptcy § 62.31 (1964).

The pattern of decisions in the lower federal courts has been that indicated by Collier, although some decisions have approved compensation for securing *discharge,* as distinguished from *exemptions,* in certain circumstances. In In re Bohrman, 224 F. 287 (S.D.Ga.1915), bankrupt's attorneys in a voluntary proceeding sought compensation for services in defending a challenge to a claimed homestead exemption. The relevant statute provided compensation for services.

> "to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow."

The Court held that the provision relating to voluntary bankrupts should be the same scope as services to involuntary bankrupts by utilizing an *in pari materia* interpretation. In a real sense, there-

fore, the Bohrman decision is no longer in point because the statute has been changed, as previously noted, to eliminate the "performance of duties" restriction.

In In re Taylor, 280 F. 127 (D.Wyo. 1922), the Court, without much elaboration, disallowed an attorney's claims for compensation relating to services rendered in defending claimed exemptions in a voluntary proceeding. The Court merely quoted Collier to the effect that " '[L]egal services to a bankrupt in having his exemptions allowed is a matter between the bankrupt and his attorneys and are not allowable.' "

In In re Hollis Lumber Co., 55 F.2d 898 (2d Cir. 1932), the Court faced an appeal from an order approving a composition offered by a bankrupt but modifying the attorney's fees agreed upon. The Court overturned the modification, declaring that attorney's fees in composition cases are not regulated by any provision of the Bankruptcy Act and are beyond interference by a court "where the offer is confirmed and the amount offered is regarded as satisfactory to the creditors, * * * in the absence of objection by a party who has an interest which would support an objection." The Court noted that attorney's fees in a composition are paid not from the estate but by the bankrupt himself.

The Court's discussion of exemptions was dictum, with the Court having grouped services relating to exemptions with those relating to discharge and composition as services for which the courts cannot fix fees. These fees were described as "a matter of contract between the bankrupt and his attorney to be paid for from sources other than the estate in bankruptcy." 55 F.2d at 900.

Some lower federal court decisions have accorded compensation to attorneys for services rendered in securing the bankrupt's *discharge,* as distinguished from his *exemptions.* In re Malkiel, 29 F.2d 790 (D.Mass.1928); In re Rosenthal & Lehman, 120 F. 848 (E.D.Mo.1902); In re Kross, 96 F. 816 (S.D.N.Y.1899). As Collier has noted:

"As to fees for the bankrupt's attorney in proceedings relating to the bankrupt's *discharge,* there is a split of authority. Tested by the aid to administration criterion, the services should evidently not be compensated for. Nor does the bankrupt perform a statutory duty when he applies for discharge." 3 Collier on Bankruptcy § 62.31 (1964).

Collier asserts that absolute denial of compensation for such services

"has undoubtedly the advantage not only of clarity and simplicity, but also of absolute consistency with what is considered to be the decisive test, benefit to the administration of the estate. The contrary attitude sacrifices consistency to vague considerations of equity and public policy." Id.

However, he also recognizes a middle ground might be taken, in light of § 47, sub. a(9), obliging trustees to "oppose at the expense of estates the discharges of bankrupts when they deem it advisable to do so; * * *." Collier suggests that the estate perhaps should bear attorney's fees when discharge is granted over the trustee's opposition "since discharge, while personal to the bankrupt, is nevertheless one primary objective of bankruptcy proceedings and the litigation over this discharge was forced upon the bankrupt." Id.

The recent decision in Lewis v. Fitzgerald, 295 F.2d 877 (10th Cir. 1961), involving *discharge,* though sufficiently sweeping in its reasoning to support denial of attorney's fees in the instant case, results, I believe, in a misreading of § 64, and I do not believe it to be controlling here.

In summary, neither the statute itself and its legislative history, nor the relevant Supreme Court cases, clearly dictate a particular result in the instant case. And most of the lower federal court decisions in point, state mere conclusions, without clear exposition of reasons supporting granting or denial of attorney's fees in connection with securing exemp-

tions. The crucial qualifying phrase in § 64 is "costs and expenses of administration". And "administration" of bankrupt estates has, in large part, not been treated as including the establishment or protection of exemptions or securing discharges. It has been given a largely creditor-oriented meaning. However, this is probably not an inevitable interpretation of "administration," although it is certainly a plausible one.

Obvious policy considerations also compete for attention in the process of giving some specific meaning to § 64. On the one hand, preservation of exemptions to a bankrupt by the Act reflects a policy objective so important that its realization arguably should be assured, to whatever extent possible, by placing the cost of necessary legal services upon the estate. However, there is apparently no evidence that placing the cost of those services upon bankrupts has jeopardized establishment of exemptions. And, on the other hand, statistics dramatically spotlight the growing need to resist further increasing bankruptcy expenses. In fully 75% of all straight bankruptcies not terminated by dismissal, no assets remain for administrative expenses, much less for creditors, after allowance of exemptions. In 12% of the bankruptcies, some assets are available for administrative expenses but none for creditors. In the remaining 13% of the cases in which creditors receive something, about 30% of the available assets in each case are consumed by administrative expenses. The remaining 70% pays an average of 18% of the total claims in each case. But after secured claims, receiving an average of ⅔ recovery, and priority claims under 64 sub. a, receiving an average of ⅓ recovery, are paid, general creditors then receive an average of *eight cents* on the dollar. And this, as already noted, is in only 13% of all straight bankruptcy proceedings not terminated by dismissal. 1953–62 Bankruptcy Tables, Tables F–4–6, –7, –9, –10.

Figures like these are more than just startling. They suggest a danger to underlying public acceptance of the existing bankruptcy system itself. And they indicate that "economy" has an increasingly urgent meaning. Attorney's fees, which have traditionally been a major object of economizing in bankruptcy, seem suitable for that purpose in the instant case in the absence of a showing of danger to the bankrupt's exemptions. In that way, the interests of the creditors are served without sacrificing the interests of the bankrupt.

The referee's finding and order of August 28, 1964, fixing compensation of bankrupt's attorneys, is affirmed.

So ordered.