**In the Matter of SANTORO EXCAVATING, INC., Debtor.**

**Bankruptcy No. 82 B 20039.**

United States Bankruptcy Court, S.D. New York.

Jan. 7, 1986.

Rehearing Denied March 7, 1986.

---

**3.** 46 B.R. 551, 554.

**4.** 13 B.C.D. 27, 49 B.R. 587 (Bankr.M.D.Ga. 1985).

DECISION ON APPLICATIONS FOR
FINAL COMPENSATION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The task of ascertaining appropriate and reasonable fees for legal services performed in a bankruptcy case is often more difficult and time consuming in those instances when the trustee in bankruptcy acts as his or her own attorney, or where the trustee is employed by the law firm seeking such allowance. In this case, Miriam Teitelbaum, was appointed as trustee in bankruptcy following the conversion of the debtor's Chapter 11 reorganization attempt to a liquidation case under Chapter 7 of the Bankruptcy Code. Mrs. Teitelbaum then retained as her counsel the law firm of Jules Teitelbaum, P.C., where she is employed as an attorney. Applications for final compensation have now been submitted at the close of this case.

Mrs. Teitelbaum seeks commissions pursuant to 11 U.S.C. § 326 in the amount of $5863.90, less $3,764.40 previously awarded to her as interim commissions. Jules Teitelbaum, P.C., as attorney for the trustee in bankruptcy, has applied for the sum of $100,811.80 for legal services in this case, less $24,408.19 previously awarded as interim compensation. Included in the application for legal fees is a requested bonus of $20,000. The accountant for the trustee, Eli Rosman, seeks compensation in the amount of $7,995.00, less $3,510 previously received as interim compensation.

On January 14, 1982, the debtor, Santoro Excavating, Inc., filed with this court a petition for reorganization under Chapter 11 of the Bankruptcy Code. The debtor had been in the business of operating a construction company. The debtor's proposed liquidating plan was rejected by the creditors' committee which believed that the debtor's estimate of the value of its assets was lower than that which the committee thought could be realized upon liquidation. On May 19, 1982, upon the request

548

of the creditors' committee, which was then represented by Jules Teitelbaum, P.C. as counsel, the court entered an order converting the Chapter 11 reorganization case to a Chapter 7 liquidation. Miriam Teitelbaum was selected by the United States trustee as the interim trustee and thereafter continued as the trustee in bankruptcy. She then obtained court approval to retain the law firm of Jules Teitelbaum, P.C. as counsel for the trustee.

In addition to collecting accounts receivable and objecting to improper claims, the trustee and her counsel demanded that insiders, Frank and Ruth Santoro, reconvey to the debtor certain real property that was allegedly transferred to them by the debtor. It was claimed that this transfer was a voidable fraudulent conveyance. The property was reluctantly returned and sold at auction for $100,000. Other assets of the estate consisting of construction equipment were also sold at the auction. A secured claim in the amount of $22,033.48 was settled for $20,500.00 because the trustee claimed that the security interest was not fully perfected.

The trustee brought a preference suit against Barclays Bank to recover for an alleged voidable preference of $20,000 because the bank released collateral which had been pledged to it by the Santoro family as guarantors of the bank's loan to the debtor. After the bank released the collateral in the amount of $20,000 to the guarantors it charged the debtor's bank account in like amount. The court dismissed the trustee's complaint because the bank, as a secured claimant, had the right to exercise a setoff against the debtor's account in accordance with 11 U.S.C. §§ 506(a) and 553. *In re Santoro Excavating, Inc.*, 32 B.R. 947, 10 B.C.D. 1369, 10 C.B.C.2d 603 (Bankr.S.D.N.Y.1983). The court stated that the dismissal of the trustee's complaint was without prejudice to any complaint that the trustee might file against the Santoro guarantors to the extent that their contingent claims against the debtor were satisfied when Barclays released the collateral. The trustee then commenced a preference action against Frank and Ruth

Santoro for $20,000, which was in return settled for a $10,000 payment to the estate.

The trustee realized additional funds for the estate when she sold certain real estate owned by the debtor for $160,000. The total gross receipts in this estate amounted to $498,389.76. The disbursements, including interim allowances, totalled $177,321.47, leaving a net balance in this estate of $321,068.29. The administration claims and priority claims, excluding the applications for compensation by the professionals, amount to $187,883.39, leaving a balance of $133,184.90. This balance of $133,184.90 must be applied first to the payment of compensation to the professionals for their services as an administrative expense in accordance with 11 U.S.C. § 503(b)(2). The funds available after the payment of compensation to the professionals, as authorized under 11 U.S.C. § 330(a), will be distributed to the general unsecured claim holders whose allowed claims amount to $390,499.21. If the compensation sought by the professionals were allowed to the full extent requested, the unsecured creditors would receive a distribution amounting to approximately 12% of their claims, whereas the professionals would have received approximately 25% of the gross estate, of which approximately 20% represents counsel fees.

*The Trustee in Bankruptcy*

In her capacity as trustee in bankruptcy, Mrs. Teitelbaum was required to make and receive numerous telephone calls to and from creditors and their attorneys, as well as to attend various conferences with her own counsel and accountant. She was also required to receive and review correspondence to the estate and, conversely, she was obliged to communicate and send letters to creditors and other interested parties who inquired about the status of administration of the case. For these services the trustee properly calculates her maximum statutory commissions to be $5,863.90, which sum is allowed, less $3764.40, which was previously paid as interim commissions.

### The Trustee's Attorneys

As counsel for the trustee in bankruptcy, the firm of Jules Teitelbaum, P.C. seeks an allowance of $56,403.61, in addition to interim compensation previously received in the amount of $24,408.19, together with a bonus of $20,000, for a total of $100,811.80.

In reviewing the time sheets submitted in support of counsel's application the court ascertained that there were 182 instances where the trustee, Miriam Teitelbaum, had telephone calls with various creditors, attorneys and interested parties where no details were given as to what the subject matter was, or whether the services involved were of a nature not generally performed by a trustee. These telephone conferences totalled 64.67 hours of billable time, and do not include those other instances where telephone calls were listed as attributable to a specific pending matter or subject. Similarly, the law firm of Jules Teitelbaum, P.C. charged for 9.67 billable hours when Miriam Teitelbaum received and reviewed correspondence in 21 instances where no explanation was given as to what the subject matter was or why this charged time involved services not generally performed by a trustee. Finally, in addition to charging for his own time, Jules Teitelbaum, P.C. charged for office conferences attended by Miriam Teitelbaum on 13 occasions where no details were given as to why a conference with the trustee in bankruptcy should be billed as legal services performed by the trustee. There were additional conferences attended by the trustee where the subject matter or the problem was identified so that the court might assume that legal services, as distinguished from trustee duties, were involved.

■ That a trustee may not be compensated as an attorney for performing trustee chores is made clear by the language in 11 U.S.C. § 328(b), which declares:

> (b) If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

■ A court must be especially circumspect in those cases where the trustee also performs legal services for the estate. The time records should describe with reasonable specificity the legal services for which compensation is claimed as an attorney, as contrasted with the administrative duties performed by a trustee. The difficulty in drawing the line between legal services and ministerial duties underscores the need for detailed particularization.

> The line between legal and non-legal services and between necessary legal services and ministerial duties of the Trustee, requiring only sound business judgment, is not easy to draw. Consequently, substantial latitude must be accorded the Bankruptcy Judge in the drawing process because he is best able to observe and evaluate counsel's performance. To assist the judge in this process, counsel's petition and supporting affidavit should describe with reasonable specificity the services for which compensation is claimed as well as the hours spent thereon.

*In re Meade Land and Development Co., Inc.,* 527 F.2d 280 at 285 (3rd Cir.1975). *See In re Orbit Liquor Store,* 439 F.2d 1351 (5th Cir.1971).

In this case, counsel for the trustee has charged the estate for what appears to be ministerial chores performed by the trustee *qua* trustee without providing the specifics as to why her telephone and correspondence time should not be treated as routine administrative duties. When previously confronted with this question in another case, this court ruled as follows:

> The court has also tabulated the billable time attributable to telephone calls, which amounts to approximately 180 hours, or about 30% of the total billable time. Many of the telephone conversations appear to relate to routine administrative duties of the trustee and do not

reveal why they should be attributable to legal services. This problem stems from the fact that the trustee retained himself as attorney for the estate. In such case, the demarcation between trustee services and attorney services should be clear and distinct. The specific subject matter and the nature of the problem that implicates legal services should be made apparent from the records. In the instant case this was not done. In order for a trustee who retains himself as attorney for an estate to recover for legal services performed, as distinguished from the trustee's statutory duties, the attorney must establish that the services claimed are not those generally performed by a trustee without the assistance of an attorney.

*In re Minton Group, Inc.,* 33 B.R. 38 at 40 (Bankr.S.D.N.Y.1983).

The billable hours for Miriam Teitelbaum's conversations, receiving and reviewing correspondence, preparation of letters to creditors, attorneys and interested parties and attending office conferences for which no specifics are given or subject matters identified, total 103.29 hours, which were billed at the rate of $175 per hour, for an aggregate charge of $18,075.75. This amount has not been substantiated and must be subtracted from the compensation claimed by Jules Teitelbaum, P.C. for legal services performed for the estate.

In reviewing counsel's time records the court notes that Jules Teitelbaum charged for 18 telephone conversations and three instances involving correspondence, for a total of 9.87 hours where no specifics or subject matter is set forth. Based upon his billing rate of $275 per hour, for what appears to be routine items, the billable charge to the estate is $2714.25. There seems to be no reason why these items should not be billed at the lower rate of $175 per hour with the result that the proper charge for these items should be $1727.25 rather than $2714.25 or $987 less. This point was stated by Judge Goetz as follows:

Furthermore, not all services should carry the same compensation. Correspondence and telephone conversations, unless the substance is set forth, should be compensated at a lower rate than truly legal services irrespective of the experience and comptency of the attorney who performs them. *In re Doyle-Lunstra Sales Corp.,* 19 B.R. 1003 (Bkrtcy. 7th So.Dak.1982); *In re Hamilton Hardware Co.,* 11 B.R. 326, 331 (Bkrtcy.E.D.Mich.1981).

*In re Sapolin Paints, Inc.,* 38 B.R. 807 at 811 (Bankr.E.D.N.Y.1984).

Presumably counsel's $275 per hour billing rate is of recent vintage, because Judge Allen observed in *In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557 at 574 (Bankr.D. Utah 1985) (decided February 14, 1985):

Teitelbaum & Gamberg is a New York City law firm, with its offices in New York City. Mr. Teitelbaum's hourly billing rate, for which he charges other clients for similar matters, is $250.00.

The fee application in *Jensen-Farley Pictures, Inc.* covered the period between September 20, 1983 through April 27, 1984. The billing period in the instant case runs from June 1, 1983 to September 23, 1985.

■ Counsel for the trustee also seeks a special allowance, or bonus, in the sum of $20,000. This is not an unusually complex case nor did it produce any novel or difficult problems. The unsecured creditors have filed allowed claims in the sum of $390,499.21. After the payment of administration expenses and priority claims, excluding funds necessary to pay the professionals, there is a balance remaining of $133,184.90 which must first be applied to the payment of the professionals for their services. The remaining funds will then be divided among the unsecured claim holders. In light of these figures, it would be an abuse of discretion to award a bonus to the trustee's counsel for legal services performed in the liquidation of this estate.

■ Based upon all of the twelve relevant factors articulated in *Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.),* 639 F.2d 1197 (5th Cir.1981), for determining counsel fees, the court concludes that counsel for the trustee is entitled to a fee in the sum of $61,749.05 which is found to be fair and reasonable. Having

previously received an interim allowance of $24,408.19, the trustee's counsel is entitled to receive an additional $37,340.86.

### The Accountant

Eli Rossman, the Certified Public Accountant, who was retained by the trustee pursuant to an order signed by this court, in which a maximum fee of $15,000 was authorized, previously received an interim allowance of $3510. The total value of the accounting services he performed for this estate is asserted to be $7995. Accordingly, he seeks a balance of $4485. The accountant's services were performed in a competent and professional manner. The description of the accounting services performed for this estate is appropriately contained in his application, which is found to be fair and reasonable. Therefore, the balance of $4485 is allowed.

SUBMIT ORDER in accordance with the foregoing determinations.