**In the Matter of WILMON, INC., Debtor.**

**Bankruptcy No. 82–1045.**
**Motion No. 85–4948.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 1, 1986.

Lawrence N. Ravick, Ravick, Beck & Henny, Pittsburgh, Pa., for trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before this Court is a motion by the attorneys for the Chapter 7 Trustee, asking the Court to reconsider their requested fee. Because this appears to be a situation which will arise frequently, we present a full explanation of the manner in which the approved fee was determined. We do this with the hope that the principles set forth herein provide all trustees who act as their own attorneys with guidelines for future fee applications.

The compensation for Trustees is calculated by a percentage of the monies brought into the estate by the Trustee's services. 11 U.S.C. § 326. The duties of the Trustee will vary, depending upon the facts of the individual case; however, a complete listing of those duties appears at 11 U.S.C. § 704. The language of § 704 is purposely broad, thereby giving the Trustee a very expansive area of administration.

The Trustee is authorized to employ those professional persons whose services are deemed necessary to assist the Trustee. 11 U.S.C. § 327(a). The Court may permit the Trustee to act as attorney for the Trustee if it appears to be in the best interest of the estate. 11 U.S.C. § 327(d). However, if the Court authorizes the Trustee to serve as his or her own attorney, the attorney will be compensated only for those services performed which require his assistance. 11 U.S.C. § 328(b). The attorney is not entitled to compensation for the performance of the Trustee's duties. *See In re Meade Land and Development Co., Inc.,* 527 F.2d 280 (3rd Cir.1975); *In re Whitney,* 27 B.R. 352 (Bktcy.D.Me.1983).

The attorney's function in assisting the Trustee is to perform services for the estate which cannot properly be conducted by one who is not licensed to practice law. *See In re Shades of Beauty, Inc.,* 56 B.R. 946 (Bktcy, E.D.N.Y.1986); *In re McAuley Textile Corp.,* 11 B.R. 646 (Bktcy.D.Me. 1981)

When the attorney for the Trustee presents a fee petition to this Court, it is the Court's responsibility to determine whether those services performed were of a truly legal nature or were actually the ministerial functions of the Trustee. *See In re Whitney, supra; In re Red Cross Hospital Association, Inc.,* 18 B.R. 593 (Bktcy.W.D.Ky.1982); *In re McAuley, supra.*

Therefore, the fee application must contain enough detail to allow the Court to determine precisely which services were performed, the amount of time expended thereon, the nature of the problem and its difficulty, the purpose of the action taken,

the result of the action, and the subsequent benefit to the estate.

These fee applications must specifically describe what *legal* services were rendered as opposed to *administrative* duties performed. This is not an easy task; but, this very difficulty explains the importance of detailed explanations of the services rendered. *See Matter of Santoro Excavating, Inc.*, 56 B.R. 546 (Bktcy.S.D.N.Y.1986); *Matter of Minton*, 33 B.R. 38 (Bktcy.S.D. N.Y.1983); *In re Whitney, supra.*

### FACTS

This case commenced as a voluntary Chapter 11 bankruptcy on March 26, 1982. A Disclosure Statement, indicating a liquidating Chapter 11 Plan was filed and approved. At the hearing for the Plan's confirmation, the attorney for the debtor-in-possession withdrew the Plan, indicating that the debtor-in-possession intended to convert the case to a Chapter 7 liquidation. Said conversion occurred in May of 1984.

By Order of this Court, dated May 26, 1984, the Trustee was appointed in this case. Shortly thereafter, he submitted an Application to serve as his own attorney. An Order so authorizing him was entered on September 4, 1984.

In the ordinary course of events, the debtor-in-possession turned over to the Trustee the sum of $16,828.00, which represented the gross receipts already accumulated during the course of the Chapter 11 bankruptcy case. After reviewing the files, it appears to the Court that the Applicant only collected an additional $2,924.21 for the benefit of the estate. Nevertheless, the Court will permit the Trustee's percentage compensation to be computed, based upon the total amount of the estate, $19,752.21, as opposed to the amount collected by the Trustee.

The topical breakdown of the services rendered and the approximate times expended by the attorney for the Trustee are as follows:

| | | |
|---|---|---|
| (1) | Services related to § 341 meeting | 1.6 Hours |
| (2) | Services related to collection of Accounts Receivable | 2.7 Hours |
| (3) | Services related to wage claimants status, inquiries, correspondence with counsel for unions | 7.9 Hours |
| (4) | Services related to security interest, possible sale and subsequent abandonment of the air compressor | 4.5 Hours |
| (5) | Services related to preparation of final account and distribution | 7.6 Hours |
| (6) | Miscellaneous | 3.4 Hours |

The Trustee, as his own attorney, submitted the following Summary of Professional Services Rendered: (The numbers preceeding the entries approximate, as closely as we are able, the topical areas involved.)

#### Senior Partners

1985

| | | |
|---|---|---|
| 01/02 | (3) Letter from Helmrich; Interoffice conference Wepfer re: Status | .3 |
| 01/08 | (2,4) Interoffice conference Wepfer and Stan Davis re: Compressor and Accounts Receivable | .2 |
| 03/04 | (3) Phone call Helmrich; Interoffice conference Wepfer re: Status | .3 |
| 03/19 | (4) Interoffice conference Wepfer re: Air Compressor | .1 |
| 08/02 | (3) Letter to Helmrich re: Distribution | .2 |
| 08/02 | (3) Letter from Helmrich and interoffice conference with Wepfer re: Account | .3 |
| 08/15 | (4) Interoffice conference with Wepfer re: New Abandonment Order of Court | .2 |
| 10/07 | (4) Review Order of Court re: Abandonment | .1 |
| 10/09 | (3) Phone call with Helmrich; Interoffice conference with C. Wepfer | .3 |

Total Senior Partners @ $150.00 Per Hour 2.0

## Associates

<u>1984</u>

| Date | Description | Hours |
|---|---|---|
| 07/03 | (6) Preliminary review of Schedules | .1 |
| 07/13 | (1) Review of file in preparation for Section 341 Meeting | .5 |
| 07/16 | (1) Follow-up on first meeting of creditor | 1.0 |
| 07/17 | (2) Drafting letter to McKamish-Chesapeake, Inc., Interoffice conference Ravick re: Release of lien | .5 |
| 07/18 | (4) Interoffice conference Dacal re: Security interest in air compressor | .3 |
| 07/24 | (2) Phone call M. Glosser re: Bonding company claim and release of lien of McKamish-Chesapeake | .2 |
| 07/25 | (2) Proofing of letter to McKamish; Memorandum to Ravick | .4 |
| 07/26 | (2) Review of letter to McKamish-Chesapeake | .1 |
| 08/09 | (3) Research on priority of payment to pension plan claimant | .6 |
| 08/28 | (2,4) Phone call William McCall re: Air compressor; Phone call D. McKamish re: Accounts Receivable; Letter to M. Glosser; Application To Serve As Own Attorney | .7 |
| 08/30 | (4) Review of M. Glosser letter; Phone call D. McKamish re: Claim; Phone call William McCall re: Air compressor | .8 |
| 09/04 | (5) Review of claim against Coffee Construction Co. | .1 |
| 09/05 | (5) Letter to M. Glosser re: Claim against All Safety, Inc. | .6 |
| 09/26 | (4) Preparation of memorandum to IRS re: Status of case; Interoffice conference Ravick re: Air compressor | .4 |
| 10/08 | (4) Letter and phone call D. Walters re: Air compressor | .2 |
| 10/23 | (2) Phone call William McCall | .2 |
| 10/26 | (3) Phone call Helmrich re: When distribution will be made | .2 |
| 10/29 | (6) Phone call Bill McCall re: Bank accounts | .1 |
| 10/31 | (6) Dictation of letter to Bonding Company re: Claim | .2 |
| 01/03 | (2,3,4) Interoffice conference Ravick re: Letter from Helmrich; Review of Accounts Receivable; Phone calls Stan Davis re: Possible purchase of air compressor | .5 |
| 01/07 | (4) Letter to Stan Davis re: Air compressor | .2 |
| 03/04 | (3) Interoffice conference Ravick re: Phone call from Helmrich | .2 |
| 03/08 | (3,4) Interoffice conference Ravick re: Phone call from Helmrich; Drafting letter to Stan Davis re: Air compressor | .4 |
| 03/18 | (4) Phone call John Berger of Harry Davis & Co. re: Air compressor; Phone call William McCall | .3 |
| 03/19 | (4) Conference Ravick re: Sale of air compressor; Phone call Harry Davis' office re: Same | .4 |
| 03/20 | (4) Phone call Stan Davis re: Valuation on air compressor | .2 |
| 06/04 | (4) Letter drafted to Grant Street Enterprises re: Air compressor | .2 |
| 06/19 | (4) Phone call John deCoux of Grant Street re: Air compressor | .1 |
| 07/01 | (3) Phone call from Helmrich re: Status of case | .1 |
| 07/08 | (3) Phone call from Helmrich re: Account | .2 |
| 07/09 | (5) Review of docket sheet and Proofs of Claim docket sheet; letter to Bankruptcy Court re: Borrowing original Proofs of Claim | .6 |
| 07/16 | (6) Trip to Prothonotary for financial statements search; review of statement on file | .5 |
| 07/19 | (5) Work on distribution; research re: Same | 2.6 |
| 08/02 | (3) Interoffice conference with D. Naab re: Priorities; drafts of letters to Helmrich and to other wage and fringe benefit claimants re: Backup documentation; review of amounts of claims; research re: Allowance of various claims; draft of Motion For Abandonment and Notice | 3.8 |
| 08/12 | (3,4) Review of correspondence; draft of letter to Neal Cramer re: Client's claim; revision and proof of Application for Abandonment | 1.0 |
| 08/13 | (4,5) Interoffice conference with Ravick re: Application for Abandonment and re: Payment of claims in Distribution Order | .4 |
| 08/15 | (4) Phone call to Bankruptcy Court re: Application To Abandon Air Compressor | .2 |

| 1984 | Associates | |
|------|------------|---|
| 08/16 | (4) Revision of Abandonment Motion | .3 |
| 08/21 | (6) Review of accounting information | .4 |
| 09/12 | (3) Phone call from Neal Cramer re: Information on claim filed | .2 |
| 10/04 | (3) Check status of account; review of wage claimants; Proofs of Claim | .4 |
| 10/08 | (4) Review of Abandonment Order | .1 |
| 10/09 | (3) Interoffice conference with Ravick re: Status of response to letters to wage claimant creditors; phone call from Helmrich inquiring as to status of account; review of claim information; two phone calls to Rosenzweig's office re: Multiple Funds claim | .9 |
| 10/23 | (3) Phone call from Elizabeth Plovanich from Rosenzweig's office re: Multiple Funds Proof of Claim; | .2 |
| | (5) Final Account drafted and estimated wrap up time | 4.0 |
| | Total Associates @ $90.00 Per Hour | 25.7 |

We find that this Summary provides little explanation of any legal services performed for the Trustee. This Court should not be required to guess which activities were legal, nor should it be necessary to conduct extensive investigation to justify a fee for an attorney who has not done so himself. *In re Nashville Union Stockyard Restaurant Co., Inc.,* 54 B.R. 391 (Bktcy.M.D.Tenn.1985); *In re Anderson,* 49 B.R. 725 (Bktcy.D.Haw.1985); *In re Horn & Hardart Baking Co.,* 30 B.R. 938 (Bktcy.E.D.Pa.1983).

However, having done so in this case, we provide the following analysis:

■ Review of correspondence and creation of same, pertaining to the status of the case of property of the estate is a ministerial function of the Trustee. No explanation of the *legal* nature of this correspondence has been offered; therefore, no legal compensation will be awarded. This same reasoning applies to telephone calls and interoffice conferences.

■ Review of the Debtor's Schedules and activities in conjunction with the § 341 Meeting of Creditors are also the Trustee's duties. It is a necessary function of the Trustee to prepare for and conduct this first meeting of creditors. The Fee Application lists attorney's time of 1.6 hours relating to the § 341 meeting. The presence of the attorney for the Trustee is only necessary if specifically legal issues are raised. If no explanation of the existence of such legal issues is offered, no such compensation can be awarded.

■ Generally, the investigation of the existence of security interests and liens are administrative duties of the Trustee. A legal issue arises only when the validity of these interests is called into question. It is not clear from the fee petition whether such legal issues were raised. Without such an indication, no attorney's fees can be justified.

The Fee Application indicates approximately 4.5 legal hours spent relating to the abandonment of an air compressor, including valuation, preparation of the Motion to Abandon, and the accompanying notices. The Court is hard pressed to understand the use of legal time as opposed to Trustee's time for this function, and in addition, the Court is hard pressed to understand why this activity took 4.5 hours.

■ The preparation of the Trustee's Application to serve as his own attorney, and the drafting of the Final Accounting and Distribution, totaling approximately 4.4 hours, are all functions of the Trustee. The Final Accounting and Distribution must be performed by the Trustee even if said Trustee has no attorney; and clearly, if no attorney has yet been appointed to assist the Trustee, no attorney could be compensated for the drafting of the Application for Appointment.

The preparation of such 'standard documents' does not require any legal expertise. These types of documents have been reduced to forms, which the Trustee is competent to recreate on his or her own behalf. *See* Colliers on Bankruptcy, Vol. 6 Forms and Annotations.

The only items listed on this fee petition which give any indications that legal exper-

tise was required are those entries listed as research of certain topics (i.e. priority payments; distribution; allowance of claims), totaling approximately 3.2 hours, and services relating to collection of Accounts Receivable, totaling 2.7 hours. We frankly feel that this is charitable, in that no explanation is offered as to the necessity of this research, nor is there explanation of the need for legal services to collect these receivables; but, since the Trustee in this case is an experienced Officer of this Court, we will assume that the research questions posed substantial complexity, requiring such legal investigation, and that these receivables would have been uncollectable without legal assistance.

As to the above-mentioned research, there remains the difficulty in ascertaining the amount of time spent in this investigation. In two of the three instances where research was deemed necessary, the time expended is grouped with a series of administrative activities. This Court disapproves of such "clumping" of activities. We can only arrive at the above-mentioned approximated times for this research by reviewing the times allocated to ministerial duties elsewhere on the Application and subtracting those amounts from the total time for that grouping.

In declining to increase the previously awarded fee, this Court again wishes to make clear that it is not attempting to chastise this attorney; it is only reminding him that it is the Trustee's duty to preserve the estate for the benefit of the creditors. A conflict can arise if the Trustee is to preserve the estate on the one hand, and as attorney for him or herself, petitions the Court for approval of fees. The only manner in which such schizophrenia can be avoided is to require the Trustee/Attorney to present fee applications in as completely detailed a fashion as is humanly possible.

Nothing prevents the Trustee/Attorney from prefacing his or her time allocations with a narrative explaining the nature of various actions requiring legal assistance. Such a practice should be considered in

order to aid the Court in future determinations.

An appropriate Order will be issued.