In re Ronald C. TAYLOR and Jayme Taylor, t/a Sir Ronald's Restaurant and Lounge, and J.J. Personnel, Debtors.

Bankruptcy No. 82–2961.
Motion No. 86–2627.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 6, 1986.

Mary Anne McKeen, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for debtors.

Robert J. Taylor, Ambridge, Pa., Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is an Objection to the Trustee's Proposed Order of Distribution in this case, the fee applications of the attorney for the Trustee and the attorney for the Debtors, as well as the Motion To Approve Employment of Counsel Nunc Pro Tunc submitted by the attorney for the Debtors (Motion No. 86–2627).

Because this Court is ordering significant adjustments in the fees requested, the Trustee's Proposed Order of Distribution cannot be confirmed, and will require revision pursuant to the changes which will follow.

### FACTS

This case was originally filed under Chapter 11 of the Bankruptcy Code on September 9, 1982. The case was subsequently converted to a case under Chapter 7 of the Code on March 17, 1983, at which time the Trustee was appointed. The Debtors received their discharge on July 25, 1984.

The Trustee filed several proposed distributions culminating in a Third Revised Proposed Order of Distribution, filed on January 9, 1986, now presently before this Court. The Trustee's Report indicates that the total amount received in the case was $8,562.92. After disbursements of $1,437.24, there remains $7,125.68. The Trustee's fee in this case is $390.00. Counsel for the Debtors requested $5,557.50 in fees and $108.05 in expenses in the Chapter 7 case; their application in the preconversion Chapter 11 case lists fees of $4,177.50 (not including an original retainer of $1,000.00) and $46.49 in expenses. The Trustee, acting as his own attorney, lists fees of $2,185.00. Clearly, the Chapter 7 administrative claims are greater than the total amount available for distribution. There would be no monies available for any Chapter 11 administrative expenses, nor would any of the creditors receive any of the amounts owed to them.

The Trustee and Debtors' counsel have determined that their fees would necessarily be paid on a pro rata basis, with the Trustee receiving $326.82, the attorney for the Trustee receiving $1,831.70, and the Debtors' attorney receiving $4,804.46.

The Court is seriously troubled by this outcome as this scenario appears to be the rule as opposed to the exception. It cannot be a policy of this Court to allow the legal fees in a bankruptcy case to completely swallow all of the assets. The Court is cognizant of the fact that the estate assets and the actual amounts claimed are not substantial. However, the Court is also cognizant of the fact that the issue contained herein and the procedures utilized are all too familiar. On too many occasions the professional fees exhaust all available assets, leaving nothing to any other creditor. Clearly Congress did not intend this result, and equally clearly, this Court will not condone this continuing result. In this case, serious difficulties appear in both of the fee petitions presented. Therefore, these fee petitions will be adjusted to correspond with the compensable hours expended.

## THE ATTORNEY FOR THE TRUSTEE

Compensation given to the Trustee for his services is determined by a percentage of the total monies received through the Trustee's services. 11 U.S.C. § 326. The services to be performed by the Trustee are enumerated at 11 U.S.C. § 794. This section gives expansive administrative responsibility to the Trustee.

Pursuant to 11 U.S.C. § 327(a), the Trustee is given the authority to employ professional persons if the Trustee determines such services are necessary. The Trustee may receive Court authorization to serve as his own attorney if such a dual role is in the best interest of the estate. 11 U.S.C. § 327(d). The attorney is only permitted to be compensated for such if his services are required in a legal capacity. 11 U.S.C. § 328(b). It is clear, however, that the attorney cannot be compensated for performing the duties of the Trustee.

*Matter of Wilmon, Inc.* 61 B.R. 989 (Bktcy. W.D.Pa.1986); *In re Meade Land and Development Company, Inc.,* 527 F.2d 280 (3rd Cir.1975); *In re Whitney,* 27 B.R. 352 (Bktcy.D.Me.1983).

■ The attorney is to assist the Trustee in the performance of services for the estate, which cannot be performed by one not licensed to practice law. *Matter of Wilmon, Inc., supra; In re Shades of Beauty, Inc.,* 56 B.R. 946 (Bktcy.E.D.N.Y.1986); *In re McAuley Textile Corporation,* 11 B.R. 646 (Bktcy.D.Me.1981).

■ Before an attorney for the Trustee can be compensated by this Court, we must determine which services performed were truly legal in nature, and which were actually the ministerial duties of the Trustee. *Matter of Wilmon, Inc., supra; In re Red Cross Hospital Association, Inc.,* 18 B.R. 593 (Bktcy.W.D.Ky.1982); *In re McAuley Textile Corporation, supra.*

This is at best a difficult task, especially when the Trustee acts as his own attorney; however, it is this very difficulty which gives credence to the absolute need for detailed explanations of the legal nature of the services performed. *Matter of Wilmon, Inc., supra; Matter of Santoro Excavating, Inc.,* 56 B.R. 546 (Bktcy.S.D.N.Y. 1986); *Matter of Minton,* 33 B.R. 38 (Bktcy.S.D.N.Y.1983); *In re Whitney, supra.*

■ This attorney has submitted a detailed itemization of services rendered. However, the entries appear in absolutely no logical order and have no corresponding time allocations. Said summary provides no assistance to this Court. We will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself. *Matter of Wilmon, supra; In re Nashville Union Stockyard Restaurant Company, Inc.,* 54 B.R. 391 (Bktcy.M.D.Tenn.1985); *In re Anderson,* 49 B.R. 725 (Bktcy.D.Haw.1985); *In re Horn & Hardart Baking Company,* 30 B.R. 938 (Bktcy.E.D.Pa.1983).

■ The attorney for the Trustee does list the following general areas of services rendered:

| | | |
|---|---|---|
| 1) | Complaint To Sell Liquor License and review of Answer by the United States | 2.50 Hours |
| 2) | Notice to 18 secured creditors of sale of the liquor license | 4.00 Hours |
| 3) | Legal advertising of sale of liquor license | 1.50 Hours |
| 4) | Telephone calls and correspondence with the Pennsylvania Liquor Control Board | 1.00 Hours |
| 5) | Calls and meeting with the Debtors re: liquor license | 1.25 Hours |
| 6) | Correspondence and telephone calls with the Debtors' attorney | 2.00 Hours |
| 7) | Prepared Renewal Application, Stipulation and Affidavit for transfer of liquor license | 1.00 Hours |
| 8) | Rescheduling of sale of liquor license and preparation of documents necessary to reschedule | 1.75 Hours |
| 9) | Sale of liquor license | 3.00 Hours |
| 10) | Meeting with the successful bidder on the liquor license | 1.50 Hours |
| 11) | Prepared Schedule of Distribution (includes future time for causing distribution to be achieved) | 3.50 Hours |

Initially, the Court acknowledges that the filing of the Complaint To Sell the Liquor License and the review of the Response thereto does constitute legal work necessitating the services of the attorney.

The preparation of the notices for the sale is a ministerial function to be performed by the Trustee. Said notice can easily be prepared by reference to a "form book", to which a Trustee should have ready access. In fact, the form notice contained in *Collier on Bankruptcy,* Vol. 6 (15th ed.) expressly calls for the signature of the Trustee. Additionally, the Court is unable to determine why the noticing of eighteen (18) creditors would consume four (4) hours. The attorney cannot be compensated for this activity.

The preparation of advertising for the sale of the liquor license is clearly the duty of the Trustee. Classification of the advertising as "legal" because the advertising

occurred in legal journals, does not make the work "legal".

■ Telephone calls and correspondence with the Liquor Control Board might possibly qualify as legal time. However, the attorney has offered no explanation, in either the original application or the supplemental itemization, to show why these services were beyond the scope of the Trustee's duties. We assume that these contacts were necessary to determine the procedures required for reinstating an expired liquor license. This is clearly the administrative duty of the Trustee, not his attorney.

Telephone calls and meetings with the Debtors, in reference to the liquor license, appear to be duties appropriately assigned to the Trustee. Since no explanation was offered as to the legal nature of these calls, or the conferences, no legal compensation can be awarded. Similarly, telephone calls and correspondence with the Debtors' counsel may very well have involved legal issues. However, without any supporting narrative, the Court cannot grant any attorney fees.

Counsel also requests compensation for the preparation of the liquor license Renewal Application, Stipulations, and an Affidavit for the transfer of the liquor license. None of these activities requires an attorney's services, as the Trustee would be required to prepare these documents whether or not an attorney had been appointed. We will not award fees to an attorney for the performance of the Trustee's duties.

The original date for the sale of this liquor license was postponed; however, it is unclear to the Court why this delay occurred. Nevertheless, the attorney requests compensation for the rescheduling of the sale and the preparation of the documents necessitated by this rescheduling. Without further explanation, the Court assumes these documents to be second notices to the secured creditors and re-advertising. As stated earlier, these are the ministerial functions of the Trustee and no attorney compensation will be awarded.

The subsequent sale of the liquor license and the meeting conducted with the successful bidder on the license are certainly the duties of the Trustee. No indication has been given for the need of legal services in these regards. Additionally, the Court is surprised that the attorney listed three (3) hours of time as being devoted to this sale. As such sales usually require about fifteen (15) minutes of actual court time, we must assume that the additional two (2) hours and forty-five (45) minutes listed was that required for travel to and from the Courthouse. Even if we had found this activity to be appropriately classified as "legal", the attorney cannot be compensated at his full legal rate for such travel time.

The final category of services for which the attorney seeks compensation is the preparation of the Distribution Schedules and the eventual distribution of the funds in this estate. Of all the services listed, this is the one most clearly attributable to the ministerial duties of the estate. *Under no circumstances is anyone but the Trustee to be compensated for the distribution of the estate.*

We find that the hourly rate of $95.00 is not excessive, and therefore, award the attorney for the Trustee the sum of $237.50.

## THE ATTORNEY FOR THE DEBTOR IN THE CHAPTER 7 CASE

Section 330 of the Bankruptcy Code provides for compensation to the debtor's attorney as follows:

(a) the court may award ... to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and,

(2) reimbursement for actual, necessary expenses.

Under the Bankruptcy Act of 1898 (the "Act"), in order for a debtor's attorney to receive compensation from the estate, the services rendered must have been "in aid of the administration of the estate". A majority of the cases which dealt with this issue under the Act found that compensation for a debtor's attorney must be limited to acts which assist the debtor in the performance of his legal duties as opposed to the exercise of his legal privileges. *2 Collier on Bankruptcy ¶ 330.04* (15th ed. 1985). The Code has made no change in this regard.

Bankruptcy Code section 521 and Bankruptcy Rule 4002 outline the duties of the debtor. Those duties include:

1) Filing of the debtor's Schedules of assets and liabilities, list of creditors, and statement of financial affairs;

2) Filing a statement of intention to claim exemptions or reaffirm debts;

3) Cooperate with the Trustee, by delivering all property of the estate and all of the debtor's records to the Trustee, to enable him to administer the estate;

4) Attend and submit to an examination (First Meeting of Creditors);

5) Attend any hearings on objections to discharge or dischargeability; and

6) Attend the discharge hearing.

Many courts have held that compensation from the estate is not allowable for services which are not directly beneficial to the estate, or are only for the benefit of the debtor. *Matter of Hunt,* 59 B.R. 842 (Bktcy.N.D.Ohio 1986); *In re Kirlan,* 55 B.R. 105 (Bktcy.N.D.Fla.1985); *Matter of Tabala,* 48 B.R. 871 (S.D.N.Y.1985); *In re Spencer,* 48 B.R. 168 (Bktcy.E.D.N.C. 1985); *In re Ezell,* 45 B.R. 13 (Bktcy.M.D. Tenn.1985); *In re Rhoten,* 44 B.R. 741 (Bktcy.M.D.Tenn.1984); *Matter of Zweig,* 35 B.R. 37 (Bktcy.N.D.Ga.1983); *In re Rosen,* 25 B.R. 81 (Bktcy.D.S.C.1982); *In re Howerton,* 23 B.R. 58 (Bktcy.N.D.Tex. 1982); *In re Harris,* 18 B.R. 100 (Bktcy.S. D.Fla.1982); *Matter of Jones,* 665 F.2d 60 (5th Cir.1982); *Matter of Olen,* 15 B.R. 750 (Bktcy.E.D.Mich.1981); *Matter of Lee,* 3 B.R. 15 (Bktcy.N.D.Ga.1979); *Matter of*

*Dawson,* 446 F.Supp. 196 (E.D.Mo.1978); *In re Orbit Liquor Store,* 439 F.2d 1351 (5th Cir.1971); *Matter of Eastwood,* 239 F.Supp. 847 (Ore.1965).

■ Counsel submitted chronological time-sheets along with her fee application. In many instances however, items for one day are "clumped" together with one time allocation. This Court does not approve of such "clumping", because it makes it virtually impossible for the Court to determine the time spent on necessary activities, as opposed to those activities which are not compensable. Additionally, many of the activities listed are too vague. The Court cannot compensate an attorney for telephone calls and meetings unless we are apprised of both the substance of the discussion and the parties involved.

In attempting to determine which of the services are compensable, we have collected the time into categories of services rendered. The following is an approximate breakdown of the work performed by the Debtor's attorney:

| | | |
|---|---|---|
| 1) | Avoidance of judgment and liens | 4.7 Hours |
| 2) | Chapter 7 First Meeting of Creditors | 4.1 Hours |
| 3) | Actions to protect the Debtors' telephone service | 3.9 Hours |
| 4) | Actions defending Complaints for Relief from Stay | 3.1 Hours |
| 5) | Actions to secure the release of frozen funds | 7.4 Hours |
| 6) | Actions which ultimately culminated in Reaffirmation Agreements | 12.1 Hours |
| 7) | Activities involving the sale of the liquor license | 2.8 Hours |
| 8) | Actions objecting to the sale of the Debtors' property | 1.25 Hours |
| 9) | Activities involving amendment of the Debtors' Schedules | 2.45 Hours |
| 10) | Activities relating to abandonment actions | 4.15 Hours |
| 11) | Miscellaneous activities (letters, telephone calls, and conferences for which there are insufficient explanations) | 21.45 Hours |

Initially, the time we have classified as "Miscellaneous telephone calls, letters and conferences" is absolutely not compensa-

ble. As stated previously, this Court will not indulge in guesswork and extensive investigation to justify a fee if the attorney has not done so herself. *Matter of Wilmon, Inc., supra; In re Nashville Union Stockyard Restaurant Company, Inc., supra; In re Anderson, supra; In re Horn & Hardart Baking Company, Inc., supra.*

■ Lien avoidance actions are taken primarily to permit the debtors to realize equity in the liened property, in order to make full use of the exemptions available. As such, the avoidance of liens worked only to the benefit of the debtors, and therefore, time spent thereon is not compensable from the estate. *In re Rosen, supra; Matter of Eastwood, supra.*

The actions to protect the Debtors' telephone service are prime examples of activities the benefit of which inures to the debtors alone. Such services are not properly compensable from the estate.

■ Actions defending against Complaints for Relief From Stay may, in some instances, be for the benefit of the estate. Often, the inclusion of such property in the estate will work to the advantage of the unsecured creditors. However, in this case, the debts on the properties, which the attorney defended, were subsequently reaffirmed, giving full protection to the unsecured creditors, but absolutely nothing to the estate. Since this activity worked solely to the benefit of the Debtors, no compensation can be awarded.

The Debtors' attorney actively pursued the release of funds frozen by a banking institution. This action was eventually settled. However, there is no indication that the estate benefited to any extent from this release of funds. As it appears that counsel's actions were again for her clients' benefit, no compensation can be awarded from the estate.

At the time of the conversion, this estate included four (4) pieces of property. The estate is concluding with no properties and no proceeds. This is because one property was returned to the secured creditor and the other three properties were retained by the Debtors via reaffirmation of the debts and statutorily permitted exemptions. The time spent by counsel in negotiating these Reaffirmation Agreements and obtaining exemptions was solely for the Debtors' benefit. The estate received nothing; therefore, the estate can give nothing. *Matter of Hunt, supra; In re Rhoten, supra; In re Howerton, supra; In re Ezell, supra; Matter of Eastwood, supra.*

The attorney for the Debtors also requests fees for the time she spent in connection with the liquor license. Clearly, if that time has been spent in assisting the Trustee in his administration of the estate, it would be compensable. However, at the hearing on this fee application, counsel stated that her activities resulted from an expectation that the Debtors would be claiming certain of their exemptions in the proceeds from the sale of the liquor license. As stated previously, assisting the Debtors in the realization of their exemptions is a benefit only to the Debtors, and is not compensable from the estate. *Matter of Hunt, supra; In re Rhoten, supra; In re Howerton, supra; In re Ezell, supra; Matter of Eastwood, supra.*

The actions taken by counsel in objecting to the sale of the Debtors' property may have worked a benefit to the estate. However, the objections ultimately did not benefit anyone but the Debtors, allowing them to reaffirm the debt and keep the property. This cannot be compensated from the estate.

The Debtors' Schedules were amended several times. Again, this activity might have benefited the estate if additional assets had been uncovered for distribution to the creditors. However, by counsel's own admission, these Schedule amendments were pursued in order to maximize the Debtors' exemptions. We have already addressed the issue of exemptions as it relates to compensation from the estate. This includes amendments to the Schedules which are solely for the Debtors' benefit. *Matter of Dawson, supra.*

Activities relating to the abandonment of property of the estate are clearly not to the

estate's benefit. This is especially true in this case, where the Trustee actually objected to the abandonment. When the Debtors' counsel represented her clients against the estate, the estate cannot be expected to provide her compensation. *Matter of Zweig, supra.*

■ The only activity which this Court finds to be compensable by the estate is the preparation for, and attendance at, the First Meeting of Creditors. The total amount of time spent at the meeting and in traveling to and from the meeting is 3.7 hours; the remaining .4 of an hour being used for preparation. Of the 3.7 hours, no more than .75 of an hour was spent at the actual meeting. Travel time, while necessary in this case, is not compensable at the same rate which the attorney charges for "legal" time. The Court believes that payment of a fifty percent (50%) rate for travel time is more than charitable.

Therefore, for her services in this Chapter 7 case, counsel for the Debtor is awarded $249.37 in fees and $108.05 in costs.

## THE ATTORNEY FOR THE DEBTOR–IN–POSSESSION IN THE CHAPTER 11 CASE

■ Because the administrative claims have been reduced significantly, there are presently funds available to pay some, if not all, of the allowed Chapter 11 administrative claims. Therefore, we will proceed with a discussion of the compensation to the attorney for the pre-conversion Debtor-in-Possession.

This case was filed as a Chapter 11 reorganization on September 9, 1982. On March 17, 1983, this Court entered an Order converting the case to a Chapter 7 liquidation. The attorney who represented the Debtor-in-Possession received a retainer of $1,000.00 prior to the commencement of the case.

At the hearing on May 13, 1986, this Court inquired of counsel as to whether or not she had received Court authorization for her employment as counsel for the Chapter 11 Debtor-in-Possession. Counsel stated she was not certain, but would promptly notify the Court in either case. Three (3) days later counsel filed a Petition for Employment Nunc Pro Tunc to the filing of the Chapter 11 case. The issue of nunc pro tunc employment must be decided before any other issue of compensation can be addressed.

For many years there has been a general aversion to nunc pro tunc appointments in this Circuit. *Matter of Hydrocarbon Chemicals, Inc.,* 411 F.2d 203 (3rd Cir. 1969); *Matter of Calpa Products Company,* 411 F.2d 1373 (3rd Cir.1969). Since the enactment of the Code, several bankruptcy and district counts in our Circuit have tempered this inflexibility when the factual situation warranted such approval.

This Court has specifically granted nunc pro tunc approval of employment in the case of *F/S Airlease II, Inc.,* 59 B.R. 769 (Bktcy.W.D.Pa.1986). However, that case was so factually dissimilar as to show why nunc pro tunc approval cannot be granted in this case.

In *F/S Airlease II, Inc.,* the professional person in question was a leasing agent with no bankruptcy practice experience, who had been assured by debtor's counsel that his employment would be arranged by them. Debtor's counsel did not properly secure Court authorization for the employment of this agent. However, since the agent's extraordinary hardship was not of his own making, this Court granted his employment nunc pro tunc. *See also, Matter of Freehold Music Center, Inc.,* 49 B.R. 293 (Bktcy.D.N.J.1985).

Similarly, courts in our Circuit and others have held that attorney oversight or neglect in obtaining authorization for employment is *not* sufficient grounds for nunc pro tunc authorization. This is especially true when the application comes to the Court after a considerable passage of time in the case. *In re Windsor Communications Group, Inc.,* 54 B.R. 844 (Bktcy. E.D.Pa.1985); *In re Lewis,* 30 B.R. 404 (Bktcy.E.D.Pa.1983) (application filed twenty (20) months after filing of petition); when the application is prompted by the

Court, *In re Lewis, supra,* (Court issued Rule to Show Cause); and when counsel is an experienced bankruptcy practitioner charged with the knowledge of the Code and Rules. *In re Arkansas Company, Inc.,* 55 B.R. 384 (D.N.J.1985); *In re Williamette Timber Systems, Inc.,* 54 B.R. 485 (Bktcy.D.Ore.1985); *In re Morton Shoe Companies,* 22 B.R. 449 (Bktcy.D. Mass.1982).

Just recently the Third Circuit addressed the issue of nunc pro tunc appointment, when it reviewed the New Jersey District Court in *In re Arkansas Company, Inc., supra.* In this decision Judge Sloviter stated:

> To summarize, we hold that retroactive approval of appointment of a professional may be granted by the bankruptcy court in its discretion but that it should grant such approval only under extraordinary circumstances. Such circumstances do not include the mere neglect of the professional who was in a position to file a timely application....in exercising its discretion the bankruptcy court must consider whether the particular circumstances in the case adequately excuse the failure to have sought prior approval. This will require consideration of factors such as whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant would prejudice innocent third parties; and other relevant factors.

*In re Arkansas Company, Inc.,* 798 F.2d 645, 650 (3rd Cir.1986).

The case at bar includes all of the above-mentioned obstacles. This Chapter 11 was filed on September 9, 1982. It was not until May 16, 1986, *almost four (4) years later,* that counsel filed her application. Furthermore, counsel's filing of said application occurred three (3) days *after* the hearing on the Proposed Order of Distribution and fee applications, during which time the Court specifically inquired as to her authority to represent the Chapter 11 Debtor-in-Possession. Finally, counsel is a member of a law firm highly experienced in bankruptcy practice, as is counsel herself. Such neglect or oversight is not an acceptable explanation in this case.

Counsel for the Debtor argues that in the past, this Court has not required prior Court authorization. This position is not accepted by this Court as a statement of fact; to the contrary, it is clear that prior Court authorization is and was regularly requested; and on occasion, granted in similar cases. Even if this Court were to accept counsel's argument (which in fact it does not), it does not appear appropriate to perpetuate an improper activity merely because said impropriety was the custom.

Counsel did receive a $1,000.00 retainer from the Debtors prior to the filing of this case. As such retainer was paid by the Debtors directly, and not from the estate itself, the Court will not require counsel to return said retainer. However, the Court will not grant any additional fees to counsel for her unauthorized representation of the Debtor-in-Possession during the Chapter 11 case.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW, at Pittsburgh in said District this 6th of October, 1986, in accordance with the Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the following fees and expenses are approved:

| | |
|---|---|
| Trustee | $ 390.00 |
| Attorney To Trustee | $ 237.50 |
| Attorney To Debtors | $ 357.42 |

It is FURTHER ORDERED that the Trustee is to file a Final Distribution in accordance with this Memorandum Opinion and Order of Court.