**In re The NASHVILLE UNION STOCK-YARD RESTAURANT COMPANY, INC., Debtor in Possession.**

**Bankruptcy No. 384–02124.**

United States Bankruptcy Court, M.D. Tennessee.

Oct. 21, 1985.

---

Daniel C. Masten, Nashville, Tenn., for debtor in possession.

C. Kinian Cosner, Jr., Cosner & Waldschmidt, Nashville, Tenn., for Buddy Killen.

William Caldwell Hancock, Waddey & Newport, Nashville, Tenn., for trustee.

Robert C. Goodrich, Jr., Farris, Warfield & Kanaday, Nashville, Tenn., for Third Nat. Bank.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on a fee application submitted by Daniel C. Masten, attorney for the debtor in possession, seeking compensation for services rendered by himself and two other attorneys. He seeks approximately $17,500. Two creditors have filed objections to the fee application. Third National Bank, a secured creditor, asserts that the application improperly seeks compensation for work performed by attorneys whose employment was not authorized by the court and who also had interests adverse to the estate. Buddy Killen, a creditor and guarantor, contends that the applicant was associated with attorneys who had interests adverse to the estate; that compensation is sought for work performed by unauthorized attorneys; that the applicant improperly received interim compensation without court approval; that most of the work was completed before the court approved the applicant's employment as counsel for the debtor in possession; and that the application reflects duplicative and unnecessary work. Upon consideration of counsel's application, the testimony of witnesses, exhibits, and the entire record, the court concludes that compensation should be denied.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

On August 16, 1984, The Nashville Union Stockyard Restaurant Company, Inc. (debtor in possession) filed for protection under Chapter 11 of the Bankruptcy Code. On September 19, 1984, the debtor in possession sought authority to retain Mr. Masten as its attorney. The debtor in possession's application stated that it desired to retain Mr. Masten due to his "experience in matters of this character" and that, to the best of its knowledge, Mr. Masten had no connection, other than any connection separately disclosed by Mr. Masten, with the debtor, the creditors, or any other party in interest. In an affidavit accompanying the application, Mr. Masten stated that he had "no connection with the debtor in this matter nor with the creditors or any party in interest, nor with their respective attorneys or accountants; that he is a disinterested person as defined in 11 U.S.C. § 101(13) and represents no interest adverse to the debtor in possession or bankruptcy estate in matters upon which he is to be engaged, and believes he can undertake representation of the debtor in possession of this case without any type of restriction."

In an attached document entitled Disclosure of Compensation, Mr. Masten also disclosed receipt of a retainer in the amount of $6,000.00. He stated that he had "not received any compensation other than is set forth herein and as [sic] no agreement regarding future compensation except as set out above." On October 3, 1984, based solely upon the application and affidavit, the court authorized the employment of Mr. Masten to represent the debtor in possession and authorized his payment "upon application and order of the court."

Subsequently, Mr. Masten submitted a fee application to the court seeking compensation for his legal services and those of Mary A. Parker and Mary Hudgens Leech. In the fee application Mr. Masten stated that he had entered into a contractual fee arrangement with the debtor in possession under which he was to receive a $10,000.00 retainer to be applied against services performed. The fee application disclosed that no portion of this retainer had been paid to Mr. Masten prepetition,

due to the weak financial position of the debtor in possession. However, the fee application also disclosed that Mr. Masten had received a series of four postpetition checks from the debtor against the retainer. Their amounts and dates were set out as follows: $3,000.00 on August 24, 1984; $3,000.00 on September 14, 1984; $3,000.00 on September 21, 1984; and $1,000.00 on September 25, 1984. The last two checks totaling $4,000.00 were returned by the bank due to insufficient funds in the account of the debtor in possession.

The first disclosure to the court of Mr. Masten's postpetition receipt of compensation without court authorization was made in a hearing unrelated to the fee application. When Mr. Masten subsequently filed his fee application, he stated that this case was his first Chapter 11 case and that he believed that he could properly accept postpetition fee payments without the court's approval as long as "[t]hose payments and the contractual basis therefore were disclosed to the court." At the hearing on the fee application, Mr. Masten and Ms. Parker testified they each received $3,000.00 of these improper postpetition payments.

The affidavits attached to Mr. Masten's fee application reflect 108.4 hours of work by Mr. Masten, 114.1 hours by Ms. Parker, 9 hours by Ms. Leech, and 12 hours by a paralegal. These affidavits have several defects. First, they inadequately describe the services performed, using entries such as "call to ABC" (8/23/84), "conference with MAP" (8/22/84), and "general research" (8/24/84). They also contain entries of questionable merit, such as "time set aside for returning phone calls of creditors and counsel and client" (8/17/84) and "call from TP re: trash pickup" (8/24/84). Additionally, compensation is sought at the attorneys' normal hourly rates for such administrative tasks as copying (8/16/84) and typing (9/16/84). Further, the application reveals that most of the legal work was performed before the court's October 3, 1984 authorization for Mr. Masten to represent the debtor in possession. Finally, the application fails to provide any

breakdown or description for the 12 hours of paralegal time included in the application.

Mr. Masten and Ms. Parker testified that they, along with three other attorneys including Ms. Leech, associated themselves as a group of independent attorneys. The attorneys in this "association" shared office space, cases, and fees. They covered for each other and had access to each other's files. Mr. Masten stated he did not attempt to have Ms. Parker and Ms. Leech appointed as attorneys for the debtor in possession because he thought that as counsel he had authority to hire other persons in his office.

Ms. Parker's testimony revealed a long-standing, multifaceted relationship with the debtor in possession. This relationship was replete with conflicts of interest. First, she was an unsecured creditor of the debtor in possession, holding against the debtor in possession a prepetition attorney's fee claim of $14,000.00, a prepetition claim on a note for $43,900.00, and a contingent claim based on the pledge of a certificate of deposit to secure the liquor tax indebtedness of the debtor in possession. In fact, Ms. Parker had appeared on her own behalf at a November 30, 1984 hearing to assert her rights as an unsecured creditor. Second, Ms. Parker was a shareholder of the debtor corporation owning 20% of its common stock. Finally, Ms. Parker was counsel of record for Malcolm Hare, a stockholder, officer, director, and large unsecured creditor of the debtor corporation, in his own individual bankruptcy case.

The testimony of Ms. Parker and the Chapter 11 trustee, Charles Tharp, established that both Mr. Masten and Ms. Parker received undisclosed free postpetition meals from the debtor in possession. Ms. Parker testified that on four or five occasions both prepetition and postpetition, she and friends dined at this expensive restaurant without charge and that on three occasions Mr. Masten received free postpetition meals from the debtor in possession. She stated that on some of these occasions she was entertaining potential investors interested in the debtor corporation. Mr. Tharp testified that he had found evidence that Ms. Parker received free postpetition meals. He also testified that, on one occasion since he had become trustee, four individuals entered the restaurant and attempted to charge meals to Ms. Parker.

Both objecting creditors point out the impropriety of rendering legal services while subject to other conflicting interests. They focus on Ms. Parker's multiple relationships with Mr. Masten, Mr. Hare, and the debtor corporation. Mr. Masten and Ms. Parker respond to these objections by pleading ignorance of Chapter 11 bankruptcy practice and by asserting that there never was any actual conflict of interest in their representation.

The Supreme Court in the case of *Woods v. City National Bank & Trust*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820, 825–26 (1941) recognized the dangers of conflicts of interest in bankruptcy cases. Due to these inherent dangers the Court held:

> [T]he incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

*Woods* at 268, 61 S.Ct. at 497. The Court of Appeals for the Sixth Circuit recently upheld the strict rule enunciated in *Woods* where an attorney represented debtor partnerships as well as creditors and partners of the debtor. *See Hunter Savings Ass'n. v. Baggott Law Offices Co., (In re Georgetown of Kettering, Ltd.)*, 750 F.2d 536 (6th Cir.1984).

The Bankruptcy Code provides statutory safeguards against conflicts of interest. Pursuant to 11 U.S.C. § 327(a), a professional person may not hold or represent an interest adverse to the estate. The professional person must be disinterested as well. To minimize the possibility of an improper appointment, Bankruptcy Rule 2014(a) provides that the court may not approve the appointment of an attorney until an application has been made which sets forth specific facts showing "[a]ll of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants." Further, under the provisions of 11 U.S.C. § 327(c) an attorney representing a trustee (debtor in possession) is prohibited from simultaneously representing a creditor.[1] To discourage conflict of interest situations, the court is authorized under 11 U.S.C. § 328(c) to deny both compensation for services and reimbursement of expenses to a professional person if, at any time during the person's employment, the person is not disinterested, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which the professional person is employed.

█ The applicants in this case, albeit possibly unknowingly, violated these statutory safeguards against conflicts of interest. Mr. Masten's original employment application failed to disclose his association with Ms. Parker or Ms. Leech. It did not set forth the retention of Ms. Parker and Ms. Leech. It did not set forth the numerous claims held by Ms. Parker vis-a-vis the debtor in possession. It did not disclose the $10,000.00 retainer agreement. It did not disclose that the $6,000.00 "retainer" was paid postpetition. Mr. Masten subsequently tried to cash $4,000.00 in additional "retainer" payments in spite of his disclosure that there was no agreement for future compensation. Mr. Masten retained Ms. Parker when he must have been aware of her relationship with the debtor in possession. There was no disclosure that the attorneys were charging dinners to the debtor in possession and that Ms. Parker was sending others there to charge dinners. As a result, the court is faced with numerous conflicts of interest and failures to comply with the Bankruptcy Code, any one of which would be sufficient to deny all compensation.

In view of these obvious and disqualifying conflicts of interest,[2] the court has no choice but to deny Mr. Masten's fee application in full and order that Mr. Masten and Ms. Parker each pay back to the debtor in possession any monies received as compensation.

Because the court has found sufficient basis for denying the fee application in full, it will only briefly address other issues relating to the fee application.

█ First, the court could not in any case allow compensation for Ms. Parker and Ms. Leech. They were never appointed attorneys for the debtor in possession. The appointment of Mr. Masten cannot be construed as an appointment of every attorney with whom he associates himself. Second, the court would not, absent a *nunc pro tunc* application, award Mr. Masten compensation for any services performed before the effective date of his appointment. *See In re Twinton Properties Part-*

---

1. Subsection 327(c) provided:

   "In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor."

   While subsection 327(c) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, the amendment does not apply to cases filed before October 7, 1984. *See* Pub.L. No. 98–353, § 553.

2. The court is most incredulous that Mr. Masten even became involved in this case while associated with Ms. Parker, a shareholder in the debtor corporation, a large unsecured creditor of the debtor corporation, and counsel to a member of the board of directors of the debtor corporation. This conflict was compounded by the employment of Ms. Parker to perform the majority of the services for the debtor in possession. However, the court assumes Mr. Masten's actions are attributable to his disclosed inexperience in Chapter 11 matters rather than an attempt to subvert the intention and letter of the Bankruptcy Code.

*nership,* 27 Bankr. 817, 819 (Bankr.M.D. Tenn.1983) *adopted* 33 Bankr. 111 (M.D. Tenn.1983). Third, the court does not allow legal compensation for administrative items such as copying and typing. They are overhead and included in the attorney's hourly rate. *In re Cumberland Bolt & Screw, Inc.,* 44 Bankr. 915, 921 (Bankr.M. D.Tenn.1984). Fourth the court requires detailed descriptions of services before compensation will be allowed. Since the applicant has the burden of proof regarding services rendered, the court will not indulge in guesswork nor undertake extensive labor to justify a fee application. *In re Tolan,* 41 Bankr. 751 (Bankr.M.D.Tenn. 1984); *In re Horn & Hardart Baking Co.,* 30 Bankr. 938, 944 (Bankr.E.D.Pa.1983). Fifth, the court does not allow compensation for duplication of effort, such as conferences between attorneys representing the same parties, without explicit explanation for their necessity. Lastly, the court requires all attorneys practicing before it to apply for compensation in accordance with the procedures set out in the Bankruptcy Code. This means application and authorization before the payment of any postpetition attorney's fees.

An appropriate order will be entered.