In re J.E. JENNINGS, INC., d/b/a Kids Point of View, Debtor.

Bankruptcy No. 83–03251K.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 10, 1986.

---

See also, Bkrtcy., 46 B.R. 167.

Erwin L. Pincus, Philadelphia, Pa., for debtor.

Kenneth F. Carobus, Philadelphia, Pa., for Creditors' Committee Members.

## OPINION OF THE COURT

DAVID A. SCHOLL, Bankruptcy Judge.

The instant Opinion addresses the authority and propriety of this Court to allow Applications by (1) an individual who served as Secretary of an Official Creditors' Committee, for compensation and reimbursement of expenses; and (2) other corporate members of the Committee, for reimbursement of expenses. Because we believe that clear and specific authority in the Bankruptcy Code is necessary to allow any compensatory disbursements from es-

tate proceeds, and that such authority is lacking relevant to such requests as those made in the instant Applications, we are constrained to deny these Applications in their entirety.

The Applications in issue were filed by Counsel to the Creditors' Committee on November 13, 1985. They are, more specifically, as follows:

1. An Application by Blue Bell, Inc., a member of the Committee, for reimbursement for air fare from Greensboro, North Carolina, for its agent to attend three (3) meetings of the Creditors' Committee in Philadelphia on July 26, 1983, August 2, 1983, and October 31, 1983, totalling $712.00.

2. An Application by three (3) other Corporate members of the Committee, for attendance by their agents at the same meetings as follows:

a. Health-Tex, Inc., $866.80 for "transportation," apparently air fare from Cumberland, Rhode Island, to Philadelphia,

b. Calabash Fashions, Ltd., $100.75 for train fare, apparently from New York, to attend the two (2) latter meetings in Philadelphia,

c. Tulip Tops, $134.23 for meals, parking, and bus fare from Reading, Pennsylvania, to Philadelphia for the latter two (2) meetings.

3. An Application of Albert Vogel, Secretary to the Creditors' Committee, for $6,000.00 compensation for services and $325.00 for postage, telephone calls, and travel, presumably from New York to Philadelphia for the three (3) meetings. While the times and dates of the services for which compensation are sought are itemized, they are not totalled, nor is any hourly rate designated. We added the time and found it to total just under fifty (50) hours, thus resulting in a request for an hourly rate of just over $120.00 per hour.

Initially approaching this subject with little guidance except awareness of a decision of the Honorable William A. King, Jr., formerly of this Court, disallowing expenses to members of a Creditors' Committee in *In re Windsor Communications Group, Inc.*, 54 B.R. 504 (Bankr.E.D.Pa.1985), we asked Counsel for the Creditors' Committee and Counsel for the Debtor to each submit Briefs addressing the following issues:

1. Did the *Windsor* decision bar the relief sought?

2. Should this Court follow *Windsor?*

Both Counsel suggested that this Court grant all of the Applications, pointing out that *Windsor* directly addressed only the issue of the Applications of the members for reimbursement, rather than that of the Secretary for compensation and reimbursement. However, interestingly, Counsel differed as to whether *Windsor* should be followed, the Creditors' Committee urging that it be "overturned" because it created too great a burden of showing benefit to the estate by Committee members seeking compensation to succeed on such application, and the Debtor urging that it be followed, stating that the Committee and its Secretary "substantially aided in the reorganization process" and hence were entitled to compensation under the guidelines set forth in *Windsor*. Authority for granting the Application was said to exist in 11 U.S.C. §§ 330(a) and 503(b)(1)(A).

Neither Counsel cited to 11 U.S.C. § 503(b)(3)(D), the statutory provision interpreted by Judge King in *Windsor*, nor to any but one of the numerous cases construing this provision. Because we agree with Judge King that this section is pivotal and we agree with the result in that case, it is necessary that our discussion begin with study of that and the other relevant sections of 11 U.S.C. § 503, which provide as follows:

(b) After notice and hearing; there shall be allowed administrative expenses, other than claims allowed under Section 502(f) of this Title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case: ...

(2) compensation and reimbursment awarded under section 330(a) of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, *or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title,* in making a substantial contribution in a case under chapter 9 or 11 of this title; or

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; ... (emphasis added)

Our research revealed that the above statutory provisions have been read in many different ways, with variant results, by numerous courts.

As the Creditors' Committee suggests, the decision in *In re General Oil Distributors, Inc.,* 51 B.R. 794 (Bankr.E.D.N.Y. 1985), would allow the compensation sought herein. Although admitting that the Code nowhere specifically allows compensation to Creditors' Committee members, the Court in *General Oil* refuses to read the language of 11 U.S.C. § 503(b)(3)(D) as prohibitive of allowance of such compensation, finding support in the Advisory Committee Notes to Bankruptcy Rule 2016 that, despite lack of specific mention, authority for such compensation is implicitly contained in § 503(b)(1)(A). Cases reasoning similarly include *In re Global International Airways Corp.,* 45 B.R. 258 (Bankr.W.D.Mo.1984); *In re La-*bine, 42 B.R. 883 (Bankr.D.Mich.1984); *In re Toy and Sports Warehouse, Inc.,* 38 B.R. 646 (Bankr.S.D.N.Y.1984); *Matter of Pennsylvania Tire and Rubber Co.,* 25 B.R. 18 (Bankr.N.D.Ohio 1982); and *In re Fireside Office Supply, Inc.,* 17 B.R. 43 (Bankr.D.Minn.1981).

Several other cases reach the same result, but rely also upon ultimately unadopted amendments to the Bankruptcy Court and Federal Judgeship Act of 1984 which proposed to specifically allow Creditors' Committees to receive "actual necessary expenses, other than compensation and reimbursement specified in [11 U.S.C. § 503(b)(2)], incurred" by a Creditors' Committee. *In re GHR Energy Corp.,* 35 B.R. 539, 541 (Bankr.D.Mass.1983). *See also In re Malden Mills, Inc.,* 42 B.R. 476, 488 (Bankr.D.Mass.1984).

Another group of cases hold that, although 11 U.S.C. § 503(b)(3)(D) bars compensation to Creditors' *Committees* per se, it does not bar compensation to individual *members* of these Committees. *In re Farm Bureau Services, Inc.,* 32 B.R. 69 (Bankr.E.D.Mich.1982); and *In re Grynberg,* 19 B.R. 621 (Bankr.D.Colo.1982). These courts proceed to apply the standards of 11 U.S.C. § 503(b)(3)(D) to requests for compensation by committee members, and reach variant results, *Farm Bureau* holding that the "substantial contribution" element is much more difficult to establish than does the court in *Grynberg.*

Finally, a group of cases holds that 11 U.S.C. § 503(b)(3)(D) must be read literally as a prohibition upon receipt of compensation or reimbursement by any Creditors' Committee, their officers, or any Committee members. *In re Air Haiti,* 46 B.R. 539 (Bankr.S.D.Fla.1985); *In re Interstate Restaurant Systems, Inc.,* 30 B.R. 32 (Bankr.S.D.Fla.1983), *reaff'd,* 32 B.R. 103 (Bankr.S.D.Fla.1983); *In re Lyons Machinery Co.,* 28 B.R. 600 (Bankr.E.D.Ark.1983); and *In re Major Dynamics, Inc.,* 16 B.R. 279 (Bankr.S.D.Cal.1981).

The starting point for our consideration of the issue at hand is our belief that we can award compensation only in those

cases where we are clearly and specifically authorized to do so by the Bankruptcy Code, particularly 11 U.S.C. §§ 330(a) and 503(b)(2) thereof.

■ Given this starting point, we find it impossible to accept the reasoning of *General Oil Distributors* and the cases reaching a like conclusion. We believe that the correct rule of interpretation of the applicable Code provisions is that expressed by the only Court of Appeals addressing the subject, i.e., *In re UNR Industries, Inc.*, 736 F.2d 1136, 1141 (7th Cir.1984), which held, in denying a Creditors' Committee request for reimbursement for court reporters, translators, and interpreters, as follows:

> [W]e note that Congress, by enacting a comprehensive reform of this nation's bankruptcy laws, has set up a carefully articulated system of administration and distribution, to which we must faithfully adhere....
>
> To safeguard this balance [between effective representation of creditors' interests and preservation of the debtor's estate], and thus to advance the policies of the bankruptcy laws, we must limit the charges against debtors to those items which may be specifically squared with the terms of the section.

We also agree with the following statement of the Court in *In re Capital Chip Co.*, 19 B.R. 262, 263 (Bankr.D.Hawaii 1982): "The general policy of the Act denies compensation unless expressly provided." It appears that *General Oil Distributors* and its progeny follow a course of reasoning inconsistent with the principles expressed by the Court of Appeals in *UNR Industries* and one which we therefore cannot accept. We do not believe, in sum, that the requisite clear and specific authority to grant compensation to Creditors' Committees can be found in the interstices of the Code or in Advisory Committee Notes. If authority is not expressly set forth in the Code itself, we are forced to conclude that it simply does not exist.

■ The invocation by the courts in *GHR* and *Madden* of Code amendments which were never passed, and the only remains of which is a dangling word "and" at the end of 11 U.S.C. § 503(b)(6), merely further supports the conclusion that Congress considered, but rejected, the appendage of a provision which would expressly allow reimbursement such as that sought in the instant Applications. This Court should not and will not add in Code provisions which Congress expressly rejected, even though it inexplicably left a meaningless conjunction in the Code.

■ This Court likewise cannot accept the reasoning of *Grynberg* and *Farm Bureau.* It seems clear to us that the phrase "other than a Committee appointed under section 1102" in § 503(b)(3)(D) must be read as necessarily meaning to include committee members as well as the committees themselves. Committees themselves are quite unlikely to make requests for compensation in their own name, and have never done so in any of the cases cited herein. Creditors' Committees, per § 1102, are ad hoc bodies, formed solely for the purposes of administration of Chapter 11 cases, and by definition are made up of individual creditors. Certainly, there is an absence of any reference in § 503(b)(3)(D), or elsewhere in the Code, of such an intention to allow compensation to individual committee members. Again, consistent with *UNR Industries*, we conclude that, if Congress did not *express* an intention to allow compensation to Creditors' Committee members, this Court is powerless to strain the apparently plain meaning of the language of the Code to allow compensation to such parties.

■ Therefore, the only interpretation of 11 U.S.C. § 503(b)(3)(D) which we can square with the Code is the conclusion that this provision does not constitute the requisite clear and specific authority to allow compensation or reimbursement to Creditors' committees *or* their members, and in fact expressly bars compensation which, in those extraordinary circumstances where a "substantial contribution" is made, might

be otherwise allowable to a creditor, indenture trustee, or equity security holder.

Like the Court in *Lyons*, we note with certain regret that a policy of undermining active creditor involvement could follow or result. However, on the other hand, we must make the following observations: (1) Creditor involvement has its own financial rewards, which the wise creditor will recognize; (2) Requests such as that made in the instant case have been rare, and vigorous creditor involvement in many bankruptcy cases is already present without the stimulus of allowing such requests. This Court is unable to say that a further financial incentive to such involvement is needed. Further, as Judge King expressed in *Windsor*, we are unwilling to "invite a new layer of additional expense to the already burgeoning costs of administering a Chapter 11 case." 54 B.R. at 510.

In any event, the decision as to what participants in the bankruptcy process may receive compensation is in the hands of Congress, and, for whatever reasons Congress acted or failed to act as it did, we must, as the *UNR* court holds, "faithfully adhere" to the balance of the creditors' interests and preservation of the debtor's estate established by Congress in the Code.

We do note that, while the result here is consistent with that in *Windsor*, we must concede that this Opinion constitutes a disagreement with the *Windsor* dictum that a Creditors' Committee which can show that it is "making a substantial contribution" may be entitled to compensation. We cannot accept this interpretation because it appears to us to have the practical effect of *applying* 11 U.S.C. § 503(b)(3)(D) to the activities of Creditors' Committees, which is exactly what is *proscribed* by the language of that section.

Hence, since we believe that compensation and reimbursement to Creditors' Committees and their members are not clearly authorized by the Code, as we believe it must be to allow same, we are constrained to deny the Applications in issue, without consideration of whether, under any standards, the particular applicants made a "substantial contribution" in this case. We therefore are entering an Order denying each of the Applications in issue.