In re **NATIONAL PARAGON CORPORATION a/k/a Paragon Needlecraft and Donut Shops Management Corporation (Jointly administered with Donuts Galore, Inc.—Bankruptcy No. 85–05329K), Debtors.**

**Bankruptcy Nos. 85–04645K, 85–05328K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 23, 1986.

Jonathan H. Ganz, Philadelphia, Pa., for debtor—National Paragon Corp.

Charles M. Golden, Philadelphia, Pa., for Creditors' Committee—Nat. Paragon Corp.

Gary M. Schildhorn, Philadelphia, Pa., for debtor—Donut Shops Management Corp. and Donuts Galore, Inc.

Robert Lapowsky, Philadelphia, Pa., for Creditors' Committee Donut Shops Management Corp. and Donuts Galore, Inc.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Presently before the Court are timely Motions filed by respective Counsel for the Debtors in the above-entitled matters asking that we reconsider our Orders disallowing most of the sums which they requested for reimbursements of costs expended for photocopying, postage, and telephone charges incurred in the course of their representation of the respective Debtors. For

the reasons stated herein, we decline to reconsider our previous Orders, and we herein express our intention to deny such requests, unless extraordinary circumstances, contrasted to the circumstances here, are present, and Counsel set forth these circumstances in detailed fashion.

Both of these matters are cases maintained under Chapter 11 of the Bankruptcy Code. In *National Paragon,* the firm of Pincus, Verlin, Hahn, and Reich (hereinafter "the Pincus firm"), in an Application filed on July 7, 1986, sought compensation for services in the total amount of $142,-217.50 and costs of $6,370.04 for a nine-month period extending from October, 1985, through June, 1986. Hourly rates requested ranged from $250.00 for Erwin L. Pincus, Esquire, who itemized 381.2 hours of services for a personal total compensation figure of $95,300.00, to $45.00 for paralegals. Since the Application alleges that the Debtor paid a $45,000.00 retainer, the net sum sought by the Pincus firm from estate proceeds, in addition to the retainer, was $103,587.24.

After careful review of the services performed, this Court, by Order of September 2, 1986, awarded the Pincus firm the net sum of $86,297.10 for its services.

However, in totalling the costs requested, we noted that $210.00 was requested for filing costs; $26.10 for "Helen Mattis," whom we recognized as a Court Reporter; $1,187.20 to "Printer's Place," which we assumed was for printing certain materials; $1,523.75 for items noted as "Federal Express" or "Postage;" $1,927.25 for "photocopying costs;" $252.75 for various attorneys' travel; $264.99 for two (2) separate luncheons; and various sums for individuals identified only by name, as follows: Erwin L. Pincus—$519.00; Emmett C. Laird—$155.00; and C. Kuhn—$4.00. Of these sums, we allowed only $1,423.30, for the first three (3) items i.e., filing costs, the court reporter's charge, and what we assumed were printing costs.

On September 10, 1986, the Pincus firm, while not contesting the sum awarded to it for compensation for its services, requested that this Court reconsider its request for reimbursement of all of the costs except $71.75 for taxi-cab fares to the Court House, i.e., a total sum of $6,298.29. In so doing, the Pincus firm itemized several of its costs entries further. Photocopying was requested in the same amount, but at a rate of twenty-five cents (25¢) per page. The items identified only by "Erwin L. Pincus" were now explained as travel costs of Mr. Pincus. The "Emmett C. Laird" was further explained by the identification of Mr. Laird as a Court Reporter. The sum of $1,187.20 for the "Printer's Place" was, however, now identified as an additional bill for photocopying. Had we been aware of the correct nature of the "Emmett C. Laird" and "Printer's Place" entries, we note that we would have allowed the former, but disallowed the latter, and awarded the Pincus firm but $391.10 in costs rather than $1,423.30.

On November 26, 1986, this Motion for Reconsideration came before the Court for disposition. We requested counsel to file a Brief supporting the Motion on or before December 5, 1986. Somewhat belatedly, we received this Brief, and have considered its contents in rendering this decision.

In *Donut Shops Management Corporation,* the firm of Adelman Lavine Krasny Gold and Levin, Esquires (hereinafter "the Adelman firm"), remitted, on August 5, 1986, a request for interim compensation for services for the period between October 30, 1985, and June 26, 1986, in the amount of $18,797.00 and reimbursement for costs in the amount of $755.70. The Application further revealed that the Adelman firm received a $17,500.00 retainer from the Debtor, and utilized $5,000.00 of this sum to pay a retainer to employ other special counsel. This special counsel has not yet filed any request for compensation or reimbursement. However, the fact that the instant request was for *interim* compensation and a request by special counsel is likely to be in the offing promises that estate proceeds will be tapped in the future now that the retainer is exhausted. The hourly rates requested ranged from

$190.00 hourly for Marvin Krasny, Esquire, to $90.00 hourly for Mark J. Packel, Esquire, although we note that 106.8 of the 125.5 hours of service were performed by Gary M. Schildhorn, Esquire, who requested $150.00 hourly for his services through January 31, 1986, and $165.00 hourly thereafter.

We allowed the Adelman firm $18,167.00 of the $18,797.00 sum requested for compensation for fees in an Order of September 10, 1986.

However, in the same Order, we disallowed all of the $755.70 in costs for which reimbursement was sought. Although the costs were well-itemized and documented with receipts, we note that they consisted of $126.46 for postage, including Federal Express; $610.00 for photocopying 3,050 pages at twenty cents (20¢) per copy; $15.75 for telephone charges; and $3.50 for cab fare.

On September 19, 1986, the Adelman firm filed a Motion for Reconsideration of the denial of its $755.70 costs request and also asked permission to file a Brief in support of its Motion. On October 1, 1986, a Brief was in fact filed, and we have carefully considered the contents and citations in this Brief in reaching our decision.

■ The section of the Bankruptcy Code pertinent to the issue at hand, 11 U.S.C. § 330(a)(2), provides as follows:

> After notice and a hearing, and subject to sections 326, 328, and 329, of this title, the court may award to ... the debtor's attorney—
>
> (1) reasonable compensation for actual, necessary services rendered by such ... attorney, ... and by any paraprofessional persons employed by such ... attorney, as the case may be, based on the nature, the extent, the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
>
> (2) reimbursement for actual, necessary expenses.

Hence, the Code grants a bankruptcy court discretion, but does not mandate, by the use of the term "may," that it can award compensation for services and reimbursement for expenses to attorneys for debtors in cases before it. The Code provides no further guidance as to what items of "expenses" are to be considered as "necessary" and hence reimburseable, but appears to leave this subject entirely to the discretion of the bankruptcy courts.

■ In exercising our discretion, it is our position that such expenses as photocopying, postage, and travel costs should be considered as overhead and therefore disallowed in all but the most extraordinary circumstances, particularly when the firms requesting such charges are also requesting what we consider to be very high hourly rates. Recognizing that this is a close question, and one on which our colleagues may differ, we stress two (2) principles which lead us to our result.

The first is a principle which we expressed in our decision in *In re Jennings,* 67 B.R. 106 (Bankr.E.D.Pa.1986), in denying compensation to officers and members of Official Creditors' Committees: we are inclined to award compensation only when the Code expressly allows it. Although we were unaware of it at the time, we note that Chief Judge Joseph L. Cosetti of the Western District of Pennsylvania almost simultaneously arrived at the same decision as we reached in *Jennings* in *In re Automotive National Brands, Inc.,* 65 B.R. 412 (Bankr.W.D.Pa.1986). Like Judge Cosetti, we relied upon the statements of the Seventh Circuit Court of Appeals in *In re UNR Industries, Inc.,* 736 F.2d 1136, 1141 (7th Cir.1984), which held as follows:

> [W]e note that Congress, by enacting a comprehensive reform of this nation's bankruptcy laws, has set up a carefully articulated system of administration and distribution, to which we must faithfully adhere....
>
> To safeguard this balance [between effective representation of creditors' interests and preservation of the debtor's estate], and thus to advance the policies of

the bankruptcy laws, we must limit the charges against debtors to those items which may be specifically squared with the terms of the section.

We also agree with the following statement of the Court in *In re Capital Chip Co.*, 19 B.R. 262, 263 (Bankr.D.Hawaii 1982): "The general policy of the Act denies compensation unless expressly provided."

While the Code does of course allow reimbursement for "actual, necessary expenses," nowhere does the Code designate what such expenses are to be, and it in no way indicates that such expenses as photocopying, telephone, and travel are to be allowed. In the absence of specific Code instruction, we believe that which costs to be allowed are entirely in our discretion and we are inclined to consider as "necessary" only those expenses which we do not consider as overhead, such as payment of filing and other official fees, court transcripts, and other truly extraordinary expenses.

It might be argued that *Jennings* and *Automotive National* can be distinguished because the section relied upon as a basis for compensation of such costs there, 11 U.S.C. § 503(b)(3)(D), was read by us as expressly prohibiting the compensation sought there, while here the statutory provision is at least open-ended. However, as we noted in *Jennings*, the language of § 503(b)(3)(D) is subject to a variety of interpretations, and, in all candor, we must concede that the majority of the courts considering the question did not share the view adopted by Judge Cosetti and us. Further, a strong public policy of encouraging more active creditor involement was admittedly sacrificed in reaching that decision.

Here, it appears that the only public policy argument that can be conceivably advanced is that disallowing such costs will create a disincentive to expend them, thus causing firms to unreasonably economize in these areas, thereby reducing the quality of their services. However, we note that the sums requested for costs are miniscule compared to those sought for compensation. On this point, it might be said that we should not bother with this area, and simply attempt to economize elsewhere. However, it is not our policy to economize simply for its own sake and, as we indicate herein, we believe that the Code supports our position.

One other point raised by both firms in this case is that such costs have been allowed by other judges of this court in the past and should therefore be allowed by us. However, we also note that bankruptcy courts generally receive numerous objections to compensation requests from irate creditors, such as one addressing us in reference to another of the many other fee applications in *National Paragon*, who are unable to understand why lawyers who entered the bankruptcy process with their eyes open as to the Debtor's financial status would be paid in preference to them, and occasionally receive complaints of political patronage and "cronyism" between bankruptcy judges and the small, specialized bar members who constantly come before them. *See* Dill & Mitchell, *Judicial Resignations, Swollen Caseload Beset U.S. Bankruptcy Court*, Wall St.J., Dec. 9, 1986, at 1, col. 6; at 13, col. 2.

While we do not in any way wish to indicate that we believe that any such criticism is justified, at least as applied to this court, we believe that the proper exercise of our discretion in this area is to disallow what we believe *should* be chargeable as overhead. We thoroughly understand the argument made by some firms that they in fact charge their clients such costs and, therefore, in awarding compensation, we are bound to follow their practices. However, while of course what these firms actually bill is relevant, as we indicate in an accompanying Opinion addressing, inter alia, our discretion to fix the appropriate hourly rates of counsel differently than as requested, *In re Shaffer-Gordon Associates, Inc.*, 68 B.R. 344, 350–51 (Bankr.

E.D.Pa.1986),[1] it is our task to establish court policy to which the applicant firms must conform rather than conforming our policy to what the firms have established themselves. As we indicate in more detail in the *Shaffer-Gordon* Opinion, we believe that this approach is necessary in light of non-adversarial posture that fee applications typically come before us and the suggestion of the Third Circuit Task Force that a court-created standardized fee schedule should be the basis for awards of compensation rather than what an individual firm might charge. *See Court Awarded Attorney Fees*, 108 F.R.D. 237, 260–62 (1985).

■ Our research indicates that our conclusion, while perhaps not the majority viewpoint or one consistent with all past practices in this Court, is a sound one which is supported by precedent. In this Court, the topic has been addressed on several occasions by our predecessor, the Honorable William A. King, Jr. In two (2) cases, *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 778 (Bankr.E.D. Pa.1984); and *In re Horn & Hardart Baking Co.*, 30 B.R. 938, 945 (Bankr.E.D.Pa. 1983), Judge King expressly denied reimbursement for "duplicating, telephone, and lexis costs ... as costs of doing business, not reimburseable from the estate within Section 330(a)(2)." However, in *In re American International Airways, Inc.*, 47 B.R. 716, 724–25 (Bankr.E.D.Pa.1985), Judge King held that

> [i]f we were to disallow all expenses which can be considered "costs of doing business," we would have to disallow almost every expense applied for, including postage, telephone calls, lexis research, word processing, messenger services, transportation, meals, etc.

We agree with this observation. However, we disagree with Judge King's position as expressed in *American International Airways, Inc.*, because we conclude that, as a result, we *would* disallow *all* of the types of expenses which he has itemized in this passage. The only costs which we can justify classifying as "necessary expenses," per 11 U.S.C. § 330(a)(2), are filing fees, costs for court and deposition transcripts, witness fees, unusual cost items, and other truly extraordinary expenses, which are carefully documented, justified, and explained.

We do note that many other courts have expressed uneasiness about reimbursing such costs by disallowing some of them on a hit-or-miss basis. Such cases include *In re Pacific Express, Inc.*, 56 B.R. 859, 866 (Bankr.C.D.Cal.1985) (in-house secretarial, duplicating, and postage/messenger service expenses disallowed); *In re Nashville Union Stockyard Restaurant Co.*, 54 B.R. 391, 396 (Bankr.M.D.Tenn.1985) (copying and typing costs said to be overhead); *In re Island Helicopter Corp.*, 53 B.R. 71, 73 (Bankr.E.D.N.Y.1985) (in-house copying expenses allowed, but at a rate of ten cents (10¢)/copy); *In re Tech Hifi, Inc.*, 49 B.R. 876, 881 (Bankr.D.Mass.1985) (lack of detail for xerox and telephone costs results in reduction of allowance for such expenses in approximately half the amounts sought); *In re Thacker*, 48 B.R. 161, 165 (Bankr.N. D.Ill.1984) (insufficient description of travel, delivery, postage, and long-distance telephone costs merits denial); *In re Tolan*, 41 B.R. 751, 756 (Bankr.M.D.Tenn.1984) (telephone calls and travel expenses not itemized or described are disallowed); *In re Southern Indus. Banking Corp.*, 41 B.R. 606, 614, 615 (Bankr.E.D.Tenn.1984) (xerox and photocopying disallowed as overhead, although delivery and telephone expenses are allowed); *Matter of Dee's Resort Wear, Inc.*, 25 B.R. 591, 592 (Bankr.M.D.Fla.1982) (time for routine telephone calls and correspondence disallowed); *In re Lafayette Radio Electronic Corp.*, 16 B.R. 360, 361, 362 (Bankr.E.D.N.Y.1982) (compensation for time expended in travel, xerox, filing, and unlogged lexis time disallowed); and *In re*

---

1. In that Opinion, we also reject an argument made exclusively by a firm involved in that case that it constitutes a violation of the Code of Professional Responsibility and Rules of Disciplinary Enforcement to disallow costs for postage, telephone service, and copying to be absorbed by the applicant firms. *See* 68 B.R. at 346–48.

*G.W.C. Financial & Insurance Services, Inc.,* 8 B.R. 122, 127 (Bankr.C.D.Cal.1981) (undocumented photocopying, postage, service, and telephone charges disallowed).

■ While we agree with these cases that such costs must be viewed critically, we cannot agree with the corollary of several of them that otherwise non-allowable costs can be allowed when the firm requesting same is either extremely persistent or painstaking in documentation of such items. Certainly attorneys, and even of paralegal and secretarial personnel in firms engaging in highly-skilled tasks, should not be given an incentive to overdo the necessity to provide adequate documentation of expenditures. We believe that a better exercise of our discretion, and one which we believe is permissible under 11 U.S.C. § 330(a)(2), at least in this instance, is development of objective guidelines as set forth herein, i.e., denial of expenses for photocopying, postage, and telephone calls, and for all other items in most instances, with exceptions for payments for filing fees, medical reports, witness fees, transcript costs, and other truly extraordinary expenses.

In its Brief, the Adelman firm cites to several pre-Code cases, most notably *Boston and Maine Corporation v. Moore,* 776 F.2d 2, 11 (1st Cir.1985), as well as to previous Orders of other Judges of this Court which have allowed such costs, without explanation, in other cases. We agree with the holding of *Boston and Maine* that we have discretion to allow such costs, and point out that the fees in issue there had been examined and approved by the Interstate Commerce Commission before they were reduced by the District Court. With respect to Orders of other judges of this court, we point to the decisions of Judge King, the only opinions of which we are aware addressing the subject in our district, which are admittedly inconsistent.

■ Returning to the particular requests for reconsideration of denial of costs before us by the Pincus firm in *National Paragon* and the Adelman firm in *Donuts Shops Management,* we are not inclined to change our previous dispositions and, therefore, we will deny both of these Motions. We do note that the original submission by the Pincus firm is totally lacking in specificity, and would properly have been denied in its entirety by this court, as well as the courts in several of the cases cited *supra,* for this reason, *see Tech Hifi, Thacker, Tolan, G.W.C., supra,* except for the $210.00 payments to the Clerk of Court. We also note somewhat regretfully that the Pincus firm obtained a windfall from its failure to properly itemize the "Printer's Place" charge. We allowed this because we thought that it was for printing, not photocopying. However, with a caveat that we shall not always be so generous in our reception of such Motions, which are not favored and often serve to clog our already-busy court, we shall not proceed to reduce this award because our Order in this case was entered before we totally formulated the policy enunciated here, and not all of our earlier awards were totally consistent therewith.

We also note that, by comparison, the submission of the Adelman firm is by far the neater, better organized, better documented, and better explained. However, as we indicated above, we cannot allow otherwise non-allowable costs on such bases, even though such documentation is always appreciated.

We should add that we fully anticipate the cooperation of the bar in deleting items for which we will not allow in future costs requests now that we have clarified our position as to how we will exercise our discretion in this area hereafter. Orders consistent with this Opinion, denying the Motions in issue, will be entered.