## In re AMERICAN INTERNATIONAL AIRWAYS, INC., Debtor.

### Bankruptcy No. 84–02379K.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 20, 1987.

David S. Fishbone, Philadelphia, Pa., for trustee and George L. Miller.

Harry P. Begier, Jr., Philadelphia, Pa., trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

We address herein a timely [1] Motion by George L. Miller, described as a "profes-

---

**1.** It is our position that any Motion for Reconsideration of an award for compensation *must* be filed within ten (10) days from the date of

the order awarding compensation or it will be denied summarily on that basis. *See* Bankruptcy Rule 9023 and Federal Rule of Civil Proce-

sional corporation" (hereinafter "the Movant"), which provided accounting services to the Trustee in this large Chapter 11 bankruptcy case, to reconsider our Order allowing the Movant about seventy-five (75%) percent of his requested compensation. Although we commend the Movant for his compliance with the requisite standards of *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975), in the preparation of his Application and his personal knowledge and involvement in the undertaking in this case, we cannot accept his argument that we should apply different, more liberal standards in assessing fee applications of accountants than those of attorneys, particularly in the area of our unwillingness to award compensation for intraoffice conferences when firms choose to spread work assignments among various individuals. We shall therefore deny this Motion.

On July 29, 1985, about a year after the filing of this case, the employment of the movant as a "Financial Management Consultant" for the Trustee was approved by this Court.[2] On January 14, 1986, this Court awarded the Movant $30,693.50 in compensation and $739.99 in costs pursuant to an Interim Application for services performed for the period from the date of the Movant's Appointment through October 31, 1985. In the instant Application, filed April 22, 1986, the Movant requested additional interim compensation of $17,634.50 and expenses of $682.04 for services rendered between November 1, 1985, and March 31, 1986. As this case is far from over, we suspect that additional Interim Applications from the Movant are in the offing.

Compensation is sought for the services of four (4) individuals employed by the Movant's firm as follows:

| NAME | TOTAL HOURS | HOURLY RATE | AMOUNT |
|---|---|---|---|
| George L. Miller | 85.5 | $100.00 | $ 8,550.00 |
| Fred Harrison | 108.3 | 65.00 | 7,039.50 |
| John J. Heck | 21.9 | 70.00 | 1,533.00 |
| Jennifer A. Murphy | 12.8 | 40.00 | 512.00 |
| | | | $17,634.50 |

We were very impressed by the ability of the Movant to comply strictly with *Meade Land* in designating the date and each activity that made up the totals indicated above. Many accounting firms requesting compensation claim an inability or an unwillingness to do this, and the Movant's submission proves the validity of our skepticism of the incapacity of accounting firms to do so.

We also noted that much of the time claimed by Mr. Miller personally was for conferences and meetings, either with various members of the law firm representing the Trustee or with his own staff members.

As an appointee who was not sworn in until August 27, 1986, five (5) months after the performance of the work in issue, we had no first-hand perception of the work involved in this case. However, we knew it to be a case in which the appointment of a Trustee was necessary and that had numerous adversarial proceedings to avoid preferences in progress. Given this knowledge

---

dure 59(c). Although he is a legal layman who filed his initial Application pro se, the Movant filed this Motion on October 22, 1986, within ten (10) days from our original Order of October 14, 1986.

2. We note that the principles which we establish here apply to "management consultants" and any other professionals hired in a bankruptcy case, as well as accountants. We also note that the tasks performed by the Movant here seem to

be almost exclusively what we would designate as services of an accountant and hence we would, in any event, consider the Movant as an accountant. *Compare In re Daig Corp.*, 48 B.R. 121 (Bankr.D.Minn.1985) (considering compensation of firm which was providing bona fide management consultant services, as described *id.*, at 48 B.R. 126–30, which contrast to those provided here).

and the commendable procedural form of the Application, we were inclined to give the Movant every benefit of the doubt in assessing his request for compensation. We allowed virtually all of the time which he claimed for conferences with the Trustee's Counsel and all other tasks performed, but did deduct, from Mr. Miller's own time, the time spent on his intra-office conferences with other firm members. Concomitantly, we deducted from the time of Messrs. Harrison and Heck the conferences with Mr. Miller and the hours expended by them in attending meetings with counsel and depositions which were also attended by Mr. Miller, crediting Mr. Miller exclusively with this time. We also deducted compensation requested for such non-professional services as picking up files and what appeared to be unreasonably long daily periods of compensable hours (e.g., 7.5 hours on December 16, 1985, preparing certain schedules, which we reduced by .5 hours) by Ms. Murphy.

We also noted that the costs for which compensation was requested were mileage allowances for transportation, parking, telephone charges, and a small amount of photocopying (no rates or number of copies disclosed).

On September 30, 1986, the Movant filed the requisite Certification that it had served its Application upon all interested parties on May 16, 1986, and that no objections thereto had been received. On October 14, 1986, in the spirit of what we believed reflected liberal recognition of the value of the Movant's services and appreciation for the Movant's compliance with *Meade Land,* we awarded the Movant the total sum of $13,738.00. In so doing, we disallowed the costs, in keeping with our policies as to same for all professionals, *see In re National Paragon Corp.,* and *In re Donut Shops Management Corp.,* 68 B.R. 337, (Bankr.E.D.Pa.1986), but awarded the Movant approximately seventy-eight (78%)

percent of the total amount of compensation sought ($17,634.50).

To our surprise, the Movant, apparently accustomed to the approval of the entire sum requested in his Applications as a matter of course, expressed vociferous objection to same in a personal telephone call to us, contending that all of his services rendered, particularly intra-office conferences, should be compensable due to certain perceived "differences" between work patterns of accountants and attorneys, concerning the latter of whom the Movant apparently believed that elimination of time for intra-office conferences was justifiable. We advised the Movant that his only recourse was to file a Motion for Reconsideration, which he did, as we noted, in timely fashion.

When the Motion came before the Court on November 26, 1986, the Movant, assisted by counsel from the office of the firm representing the Trustee,[3] presented over an hour of testimony, admitting into the record several pages of a text entitled CODIFICATION OF STATEMENTS ON AUDITING STANDARDS (hereinafter referred to as the "Auditing Code"), which indicate that accounting firm engagements are to be planned by firm supervisory personnel. The Movant's testimony also indicated a firm personal grasp on the problems presented by the engagement and he was able to describe each task and the significance of each in detail, and did so as to many tasks designated in the Application.

At the close of this testimony, we requested the Movant's counsel to submit a Brief in support of the Motion on or before December 12, 1986. The only case precedents cited were an earlier decision in this same case on earlier motions for compensation before our predecessor, the Honorable William A. King, Jr., *American International Airways, Inc.,* 47 B.R. 716 (Bankr.E.D.Pa.1985), and a case cited in that decision.

---

**3.** We would note, as guidance to counsel who represented the Movant, that the time spent in so doing is not such as we would consider compensable, as it is time spent on a fee application. *See In re Shaffer-Gordon Associates, Inc.,* 68 B.R. 344, 347–50 (Bankr.E.D.Pa.1986).

■ The starting points for our discussion, as the Movant's counsel aptly states, are 11 U.S.C. §§ 327, 328, and 330(a), which, in the applicable form that they existed prior to the 1986 amendments, are set out in full in the footnote below.[4] We believe that a consideration of these Code sections provided as a whole establishes, beyond a doubt, that Congress meant to set the standards for appointment and compensation of *all* professional persons, including attorneys, accountants, and "financial management consultants" the same. Thus, in 11 U.S.C. §§ 327(a), 327(b), 327(d), and 328(b), specific references to "attorneys" and "accountants" are juxtaposed, and it seems quite clear from these provisions that all references to "professional persons" are meant to include, *inter alia*, both attorneys and accountants.

**4.** Sec. 327. Employment of professional persons.

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under section 721 or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

(c) In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor in which case the court shall disapprove such employment if there is an actual conflict of interest.

(d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(f) The trustee may not employ a person that has served as an examiner in the case.
Sec. 328. Limitation on compensation of professional persons.

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

(b) If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

(c) Except as provided in section 327(c), 327(e) or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title, if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed....
Sec. 330. Compensation of officers.

(a) After notice and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
(2) reimbursement for actual, necessary expenses.

It is therefore not surprising to learn that the courts which have addressed the specific subject of the relationship of applications for compensation by attorneys and accountants have unanimously concluded that "an accountant's application for compensation is reviewed under the same standard applying to attorneys." *In re R & B Institutional Sales, Inc.,* 65 B.R. 876, 884 (Bankr.W.D.Pa.1986). *Accord: In re Affinito & Sons,* 63 B.R. 495, 497 (Bankr.W.D.Pa.1986); and *In re Cumberland Bolt & Screw, Inc.,* 44 B.R. 915, 916 (Bankr.M.D.Tenn.1984). *Cf. In re Daig Corp.,* 48 B.R. 121, 136 (Bankr.D.Minn.1985) (factors established in connection with fee applications of attorneys apply to management consultants as well).[5]

These cases specifically address the contention frequently made by accounting firms (although commendably not by the Movant) that they cannot (and presumably will not) comply with the procedural standards set forth in *Meade Land, supra,* in preparing their fee applications. Unfortunately, our only answer to these firms per the Code requirements, is that, if their assertions that they cannot and will not provide such applications is true, then we cannot and will not grant their applications. We will permit accounting firms which did not keep contemporaneous records, for which there may have been an excuse of ignorance in the past which we will not accept hereafter, to reconstruct their applications to comply with the procedural requirements of *Meade Land.* However, we will not allow such firms any further dispensations.

■ The second pertinent issue raised by the Movant is whether this Court may properly exercise its discretion to exercise compensation for intra-office conferences and meetings between professionals of the same firm, involved in a single engagement. We believe that we have the discretion to strike requests for compensation for such time and we will consistently do so in all fee applications unless truly extraordinary circumstances exist, which are set forth in detail in the Application. *But see National Paragon, supra,* at 343 (otherwise non-allowable compensation will not be allowed simply because applicant is persistent or painstaking in documentation).

It is our belief that it is an internal decision of a professional firm to delegate the specific tasks involved in an engagement among various individuals in a firm, as opposed to designating one or two individuals to do the work involved. The decision to so delegate tasks is entirely within the discretion of the firm, and may be justified by a turnover in personnel, by the belief that it is more efficient to have persons with different specialties work together in a single undertaking, by the belief that it is important to conserve resources by having each professional perform only those tasks requiring his particular level of expertise, or simply adherence to the notion that "two heads are better than one." Or no justication may exist except protocol or custom within a firm. However, it must be observed that, if one or a small number of professionals are assigned to a particular case, the intra-office conferences can be reduced or perhaps eliminated entirely.

It is our belief that, irrespective of the justifications which may or may not exist, such conferences are not compensable services against the fund created in an estate in bankruptcy. Therefore, we generally disallow or reduce such time to often both, and nearly always one, of the conference participants, unless some extraordinary justification appears.

We do note that eliminating or reducing time spent on intra-office conferences has been a classic practice of bankruptcy judges in this and other courts. *See, e.g., In re Meade Land & Development Co., Inc.,* 577 F.2d 858, 860 (3d Cir.1978); *In re Beck-Rumbaugh Associates, Inc.,* 68 B.R. 882, 887–88 (Bankr.E.D.Pa.1987) (per SCHOLL, J.); *In re Mansfield Tire & Rub-*

---

5. See also page 397 n. 2, for comparison of the services provided in *Daig* and those of the Movant here.

*ber Co.*, 65 B.R. 446, 460–61 (Bankr.N.D. Ohio 1986); *In re Amatex Corp.*, 70 B.R. 624, 626 (Bankr.E.D.Pa., 1985) (per KING, J.) and *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 777 (Bankr. E.D.Pa.1984) (per KING, J.). In fact, consistent with his pronouncements elsewhere, Judge King significantly reduced the billing time for intra-office conferences in the very fee application decision in this Court cited by the Movant in its Brief. 47 B.R. at 724.

We note, as did the court in *In re International Coins & Currency, Inc.*, 23 B.R. 814, 817 (Bankr.D.Vt.1982), that the compensation allowed to an accountant, like all professionals, cannot be ascertained on merely a "time clock basis," but that the court must assess the reasonableness of the services for which compensation is requested. The provisions of the Code and authority holding that compensation of accountants is to be reviewed under the same standards as attorneys, and the observation that we do not usually consider intra-office communications reasonably necessary to the provision of services to debtors' estates strongly suggest, taken together, that intra-office communications should not be compensable for accountants. We do not believe that any of the arguments of the Movant undermine the logic of this reasoning.

Contrary to the Movant's assertions, we see nothing in the Auditing Code that requires extended or repeated intra-office conferences between accountants. To be sure, the Auditing Code requires that a firm "member" provide certain supervision to other firm employees. However, we fail to see any real difference between this supervision and the supervision that takes place in any sizable law firm. The amount of supervision required is a function of how the firm—be it a law firm or an accounting firm—chooses to delegate the tasks among its members in performing an engagement. Hence, this Court cannot justify compensating accountants for intra-office conferences, or for having several firm members attend dispositions, or for having firm members perform non-professional tasks such as picking up files, or allowing costs for travel, parking, and telephone calls, which we consider to be overhead, any more quickly than we could for attorneys.

We should observe, in all fairness, that we have never doubted that law firms requesting compensation for even items that we refuse to compensate, such as inter-office communications, do so in less than good faith and because of their firm belief that such services were indeed necessary and compensable. However, we reaffirm the general principles set forth in *Shaffer-Gordon, supra*, at 351, and *National Paragon, supra*, at 341–42, that it is our responsibility to set standards for what tasks we deem compensable in ruling on fee applications rather than accepting what the firms, who are clearly most interested parties, urge upon us.

We do note that courts have, similar to our exercise of our discretion to strike compensation for intra-office conferences here, specifically disallowed accountants compensation for services which the courts have determined are "duplicative," *In re Westwood Asphalt*, 45 B.R. 111, 112 (Bankr.E. D.Mich.1984), and for having more than one member of the firm present at meetings. *In re Rego Crescent Corp.*, 37 B.R. 1000, 1019 (Bankr.E.D.N.Y.1984). We also note that allowing the Movant about seventy-eight (78%) percent of the compensation requested is much more liberal treatment than accountants have been given in numerous other reported cases. *See, e.g., R & B, supra* (request of $11,400.00 reduced to $5,100.00); *Affinito, supra* (request for $13,616.90 reduced to $2,000.00); *Cumberland, supra* ($18,419.98 request reduced to $10,000.00); *In re New England Fish Co.*, 33 B.R. 413 (Bankr.W.D.Wash.1984) (accountant directed to turn over $179,925.00 received for services, offset by $9,000.00 allowance for services); and *International Coin, supra* ($121,829.00 request reduced to $80,000.00).

Finally, we must note that we do not favor Motions to reconsider our fee

awards, *National Paragon, supra,* at 343, as taxing upon the scarce resources of the court. We are therefore compelled to deny the instant Motion, and an Order so providing will be entered.[6]

See also, Bkrtcy., 69 B.R. 806.

**6.** We also note that, immediately after our Order of October 14, 1986, we received Applications from the Movant in which it escalated Mr. Miller's personal hourly rates of $100.00 to $120.00, presumably as a means to offset our previous ruling. We must remind the Movant, as we indicated in *Shaffer-Gordon, supra,* at 350–51, that we must also exercise our discretion to establish reasonable hourly rates and limit the rates requested. Dissatisfaction with a previous fee award is clearly not, in our view, an acceptable reason for increasing the hourly rate in a future fee application.